**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,<br><br>Debtors. | ) | Chapter 11<br><br>Case No. 23-11962 (TMH)<br><br>(Jointly Administered) |
| DRIVETRAIN, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., *et al*. Litigation Trust,<br><br>Plaintiff,<br><br>v.<br><br>UHY LLP,<br><br>Defendant. | ) | Adv. Proc. No. 25-52378 (TMH) |

**<u>DEFENDANT UHY LLP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTS 1 AND 2 OF PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. NATURE AND STAGE OF THE PROCEEDING .......... 3

III. SUMMARY OF ARGUMENT .......... 4

IV. FACTUAL BACKGROUND .......... 4

V. LEGAL STANDARD .......... 8

VI. ARGUMENT .......... 10

- A. Plaintiff Cannot Escape Imputation of the Bad Acts Committed by Near's Officers Both Before and After the Merger .......... 10
- B. The In Pari Delicto Doctrine Bars Plaintiff's Negligent Misrepresentation Claim Against UHY (Count 1) .......... 13
  - i. New York law applies to Plaintiff's claims .......... 13
  - ii. New York's In pari delicto/Wagoner Rule requires dismissal of the claim with prejudice .......... 19
- C. Plaintiff Fails to State a Claim for Unlawful, Unfair, and/or Fraudulent Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 (Count 2) .......... 24
  - i. Plaintiff fails to allege that UHY's conduct was unfair, fraudulent, or unlawful .......... 24
  - ii. Plaintiff fails to establish entitlement to equitable relief .......... 27

VII. CONCLUSION .......... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
29 F.3d 855 (3d Cir. 1994)....10

*In re Am. Int'l Grp., Inc.*,
965 A.2d 763 (Del. Ch. 2009).... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....8, 9

*Cantu v. Resol. Tr. Corp.*,
4 Cal. App. 4th 857 (1992)....13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)....24, 26

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020)....24, 25, 26

*Edwards v. A.H. Cornell & Son, Inc.*,
610 F.3d 217 (3d Cir. 2010), *cert. denied* 562 U.S. 1280 (2011)....8

*Feltman v. Kossoff & Kossoff LLP (In re: TS Emp't)*,
597 B.R. 543 (Bankr. S.D.N.Y. 2019)....21

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*,
551 B.R. 732 (S.D.N.Y. 2016)....22

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)....9

*In re General Motors (Hughes) Shareholder Litigation*,
897 A.2d 162 (Del. 2006)....9

*Glenn K. Jackson Inc. v. Roe*,
273 F.3d 1192 (9th Cir. 2001)....25, 26

*Hale Bros. Inv. Co., LLC v. StudentsFirst Inst.*,
2017 WL 590255 (E.D. Cal. Feb. 14, 2017)....12

*Hill v. Opus Corp.*,
464 B.R. 361 (C.D. Cal. 2011) .....28

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995).....8

*HSA Residential Mortg. Services of Texas v. Casuccio*,
350 F.Supp.2d 352 (E.D.N.Y. 2003) .....16

*In re ICP Strategic Income Fund, Ltd.*,
730 Fed. Appx. 78 (2d Cir. Apr. 23, 2018).....19

*In re Kaiser Group Intern., Inc.*,
2010 WL 3271198 (Bankr. D. Del. Aug. 17, 2010) .....16

*Kirschner v. Grant Thornton LLP*,
No. 07 Civ. 11604, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009), *affirmed*,
626 F.3d 673 (2d Cir. 2010).....19, 20, 22

*Kirschner v. KPMG LLP*,
938 N.E.2d 941 (N.Y. 2010).....20, 21, 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .....27, 28

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993) .....8

*Leveto v. Lapina*,
258 F.3d 156 (3d Cir. 2001).....10

*In re Madoff Inv. Secs LLC*,
721 F.3d 54 (2d Cir. 2013).....21

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005) .....28

*Maudlin v. Pac. Decision Scis. Corp.*,
137 Cal. App. 4th 1001 (2006) .....12

*In re MF Global Holdings Ltd.*,
611 Fed. App'x 34 (2d Cir. May 22, 2015) .....22

*In re Nat'l Century Financial Enterprises, Inc.*,
846 F. Supp. 2d 828 (S.D. Ohio 2012) .....15

*Nazemi v. Specialized Loan Servicing, LLC*,
637 F. Supp. 3d 856 (C.D. Cal. 2022) .....24, 26

*New Greenwich Lit. Trustee, LLC v. Citco Fund Servs. (Europe) B.V.*,
41 N.Y.S.3d 1 (N.Y. App. Div. 2016) ....................19

*Nisselson v. Lernout*,
469 F.3d 143 (1st Cir. 2008) ....................11, 13, 23

*O'Melveny & Myers v. F.D.I.C.*,
512 U.S. 79 (1994) ....................19

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ....................27

*OpenGate Capital Group LLC v. Thermo Fisher Scientific Inc.*,
2014 WL 3367675 (D. Del. July 8, 2014) ....................14

*Overland Leasing Group, LLC v. First Financial Corp.*,
436 F. App'x 119 (3d Cir. 2011) ....................15, 16, 18

*Pergament v. Amton Inc. (In re: PHS Group Inc.)*,
581 B.R. 16 (Bankr. E.D.N.Y. 2018) ....................8, 20

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ....................9

*In re Rospatch Sec. Litig.*,
1992 WL 226912 (W.D. Mich. 1992) ....................16

*Seitz v. Marcum*,
2024 WL 4032638 (Sup. Ct. N.Y. Aug. 30, 2024) ....................22

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991) .................... *passim*

*Sonner v. Premier Nutrition Corporation*,
971 F.3d 834 (2020) ....................27

*Sugarman v. Brown*,
73 Cal. App. 5th 152 (2021) ....................27

*Tellabs, Inc. v. Makar Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................9

*Trierweiler v. Croxton & Trench Holding Corp.*,
90 F.3d 1523 (10th Cir. 1996) ....................15

*United States v. Mathews, et al.*,
Case No. SI 24 Cr. 630 ....................7

*West Penn Allegheny Health Sys., Inc. v. UPMC*,
627 F.3d 85 (3d Cir. 2010)....................6

*Zorio v. Near North America, Inc.*,
Case No. 2:23-CV-08206-JLS-BFM ....................1, 7

**Statutes**

Cal. Bus. & Prof. Code § 17200 ....................3, 4, 23

Cal. Corp. Code § 1107(a) ....................11

Del. Bus. Corp. Code § 259 ....................10, 23

Fed. R. Civ. P. 8(a) ....................9

Fed. R. Civ. P. 9(b) ....................25, 26

Fed. R. Civ. P. 12(b)(1)....................8

Fed. R. Civ. P. 12(b)(6)....................8, 9, 10

N.Y. Bus. Corp. Code § 906 ....................11

United States Bankruptcy Code Chapter 11 ....................3

**Other Authorities**

Restatement (Second) Conflicts of Laws § 6....................14, 15, 18, 19

Restatement (Second) Conflicts of Laws § 145.................... *passim*

Restatement (Second) Conflicts of Laws § 148....................14, 15, 17, 18

## I. INTRODUCTION

Defendant UHY LLP ("UHY") moves to dismiss Counts 1 and 2 of the Complaint because Plaintiff Drivetrain, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., *et al*. Litigation Trust ("Plaintiff") paints an inaccurate and incomplete picture of the events leading up to and following debtor Near Intelligence, Inc.'s ("Near") bankruptcy. Instead, it cherry picks and deliberately misstates "facts" in an attempt to allege that Near's auditor, defendant UHY LLP ("UHY"), made material misrepresentations to the special purpose acquisition company, KluedIn I Acquisition Corp. (the "SPAC" or "KluedIn"), that formed Near following a de-SPAC merger transaction. In reality, however, all misrepresentations were made *by Near itself* pursuant to a years-long fraud perpetrated by its executives.

Specifically, these Near executives orchestrated a round-tripping scheme (*i.e.,* placing fake orders) with an entity personally owned by Near executives, which was both a vendor and customer of Near in order to inflate revenue and Near's market value. As explained in detail in the federal criminal indictment of the Near executives who perpetrated the fraud, the executives "took steps to mislead the independent certified public accountants engaged to audit Near's financial statements," including by making "false representations" to UHY and actively concealing their ownership in the customer and vendor on the other side of the round-tripping scheme. As a result, the fraud did not come to light until a whistleblower at Near disclosed it in a publicly filed lawsuit against the company in September 2023. Soon after, Near announced that its revenue may have been overstated and that its financial statements should not be relied on. Near then filed for bankruptcy in December 2023.

Plaintiff misconstrues or omits these material but inconvenient facts from its Complaint, including that the fraud continued at Near *after* the merger, in an anemic attempt to avoid the black-letter imputation of Near executives' bad acts to the surviving Near entity and clear

prohibition of its negligent misrepresentation claim against UHY under applicable New York law. Indeed, the Complaint does not even mention the federal indictment that lays out the actual facts underlying the fraud, presumably to prevent this Court from understanding the complete story of the fraud, which demonstrates that UHY was itself a victim of Near's fraud and did not engage in any wrongdoing. But Plaintiff cannot escape the imputation of the bad acts by Near's own executives by artful pleading. Delaware law is clear that the separate corporate entities of KluedIn and Near ceased to exist upon completion of the de-SPAC merger, and that the surviving corporation—which is the debtor represented by Plaintiff here—retained all of the liabilities of the pre-merger entities, including those related to the fraud of its own executives. And, compounding the fatality of this claim, because Near's own executives were the sole perpetrators of the fraud both before and after the merger, Near's negligent misrepresentation claim against UHY is completely barred by New York's robust *in pari delicto* doctrine, which New York courts (as well as Delaware courts applying New York law) label the "*Wagoner* Rule".

There can be no credible dispute here that New York law applies to Plaintiff's claim. Near retained UHY, a New York limited liability partnership, and entered into multiple audit engagement agreements providing for the application of New York law, which UHY relied upon when rendering its services. All work on Near's audit was performed in New York by an auditing team located in UHY's New York office. Knowing that it has no standing to assert its claim against UHY under applicable New York law, Plaintiff strains to manufacture the most tenuous of connections with California: namely, that (i) UHY coincidentally has a satellite office in California even though *none* of the work for Near was done there and no personnel from that west-coast office ever worked on the Near matter, and (ii) Near and KludeIn were Delaware corporations based in California and thus should be deemed to have "received" UHY's audit reports in

California. But there is simply no legitimate reason to apply California law here, and thus, Plaintiff's negligent misrepresentation claim against UHY are squarely barred under applicable New York law.

Plaintiff's other state law claim, for violation of California's Unfair Competition Law ("UCL"), is also deficient and cannot be cured by amendment. Plaintiff's paltry allegations of a violation of the UCL are merely conclusory restatements of the various pleading standards set forth by California courts that fail to sufficiently state a claim for any UCL violation by UHY. And, importantly, the only relief available under the UCL is equitable in nature, but Plaintiff has failed to establish any entitlement to equitable relief here.

For these reasons, and those set forth more fully below, UHY respectfully requests that the Court dismiss the state law claims (Counts 1 and 2) in Plaintiff's Complaint with prejudice.

## II. NATURE AND STAGE OF THE PROCEEDING

On December 8, 2023, Near filed a voluntary petition for relief in this Court pursuant to title 11 of the United States Code. On March 13, 2024, Near filed the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 336] (the "Plan"). On March 15, 2024, the Court confirmed the Plan, as supplemented by filings on February 27, 2024, March 11, 2024, and March 13, 2024 [D.I. 305, 328, 337], in its *Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the Modified Third Amended Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 346] (the "Confirmation Order"). The Confirmation Order appointed the Trustee as the representative of Near's estate and vested in the Trustee the authority to "investigate[] and, if appropriate, pursu[e]" certain causes of action, including causes of action that previously belonged to Near. Thus, pursuant to the Confirmation Order, the Trustee

"shall be the representative of the estate" and "shall be the Debtors' successor in interest with respect to the Litigation Trust Assets and all actions, claims, defenses, rights, or interests constituting Litigation Trust Assets." Confirmation Order, ¶ 13. On October 30 2025, Plaintiff filed its Complaint against UHY in this adversary proceeding.

## III. SUMMARY OF ARGUMENT

Count 1 of Plaintiff's Complaint for Negligent Misrepresentation should be dismissed with prejudice because this claim is barred by New York's strong *in pari delicto* doctrine/*Wagoner* Rule. As Litigation Trustee for the debtors, Plaintiff stands in the shoes of the corporate entity that survived the merger, Near Intelligence, Inc., and as such, the fraud conducted at the pre-merger company is imputed to the surviving corporation. Because New York law applies to this claim, Plaintiff lacks standing to maintain this claim under the Second Circuit's *Wagoner* Rule.

Count 2 of Plaintiff's Complaint for violation of California's Unfair Competition Law should be dismissed with prejudice because Plaintiff has failed to sufficiently plead this claim, and the deficiencies cannot be cured by amendment. Plaintiff's only allegations in Count 2 are mere recitations of the various pleading standards without any specific allegations as to how UHY's conduct meets those standards. Moreover, the UCL provides only for equitable relief, and Plaintiff has failed to establish any entitlement to such relief.

## IV. FACTUAL BACKGROUND

### <u>The Alleged Round-Tripping Scheme</u>

Near was a global data intelligence company which, through its SAAS product, Allspark, enabled its customers to collect consumer data for use in advertising and marketing campaigns, then evaluate the success of those campaigns. *See* Request for Judicial Notice ("<u>RJN</u>") Exhibit 1, *Declaration of John Faieta in Support of Chapter 11 Petition and First Day Pleadings* ¶¶ 6, 16, 18. A New York-based mobile advertising company called MobileFuse, LLC ("<u>MobileFuse</u>") was

both a customer of Near's and one of its vendors for compiled and curated consumer data. *See id*. ¶ 35; RJN Exhibit 2, Amended Complaint filed in United States Bankruptcy Court for the District of Delaware, *Drivetrain, LLC v. MobileFuse, LLC*, Adversary Proceeding No. 25-52298 (TMH) ¶ 1. In or around January 2021, Near's founder, Chairman, and CEO, Anil Mathews, and its Chief Financial Officer, Rahul Agarwal ("Rahul"), along with another Near executive, secretly invested $2 million in MobileFuse via a Singapore private limited company, in exchange for approximately 10% of the equity in MobileFuse, which was then held by these Near executives. Cplt. ¶ 18; RJN Exhibit 2 ¶¶ 7, 26-28.

In early 2021, Near decided that it would like to go public via a merger with a SPAC. Cplt. ¶ 19. To make itself more appealing to potential SPACs, Mathews and Rahul concocted a round-tripping scheme with MobileFuse's CEO, Kenneth Harlan, to artificially inflate Near's revenue. RJN Exhibit 1 ¶ 35. To implement (and conceal) the fraudulent scheme, Mathews and Rahul would fabricate a large invoice from Near to MobileFuse under sham contracts for services it did not render. *Id.*; RJN Exhibit 2 ¶¶ 29-31. Near would pay Mobile Fuse's invoices in full, and Mobile Fuse would, in turn, pay Near's invoices in full, which represented payment for services actually rendered and also payment for the services never rendered. RJN Exhibit 1 ¶ 35; RJN Exhibit 2 ¶¶ 38-42. Near then booked the entire inflated payment from MobileFuse as revenue. Between May 2021 and September 2023, Near fraudulently inflated its revenue by approximately $25 million using this scheme. *See* RJN Exhibit 2 ¶¶ 9, 42.

**The Merger and Near's Engagement of UHY**

After the round-tripping scheme had already started, KludeIn began pursuing Near as a possible acquisition target. In or around May 2022, Near and KludeIn entered into a definitive agreement and plan of merger that would make Near a wholly owned subsidiary of KludeIn. Cplt.

¶ 20; RJN Exhibit 1 ¶ 19. Pursuant to United States securities laws, Near was required to publicly file a Form S-4 and two years of audited financial statements before it could go public via a de-SPAC merger. Cplt. ¶ 22. UHY was retained to act as the independent auditor to Near, and audited its financial statements for fiscal years 2020, 2021 and 2022, and performed quarterly reviews for the first two quarters of fiscal year 2023. *Id*. ¶¶ 46-48.

UHY's audit engagement agreements with Near provide that New York law applies to any claims arising out of the services it provided to Near:

> This engagement letter and all services rendered hereunder shall be governed, construed, and enforced by the laws of the State of New York, without the need to resort to principles of conflicts of laws. Law shall apply to any legal or equitable proceeding that shall be instituted in any way arising out of this engagement letter, any obligations contained or allegedly contained herein, and all services rendered touching or relating in any way to the obligations of this engagement letter. All parties to this engagement consent to the exclusive jurisdiction of the federal and state courts located in New York and, more particularly, the state court located in New York County, New York and the federal court located in the Southern District of New York.

*See* Declaration of Scott Norris ("Norris Decl.") Exhibits A-C.[1]

As anticipated by UHY and Near, and reflected in their engagement letters and signed audit opinion letters, all of UHY's audit work for Near, including its preparing and signing the audit opinions at issue, was performed in New York. *See* Norris Decl. Exhibits D & E.

Near's merger with KludeIn closed on March 23, 2023, at which point the KludeIn merger entity changed its name to Near Intelligence, Inc. (the debtor here), and became a publicly traded company on the NASDAQ. Cplt. ¶ 20; RJN Exhibit 1 ¶ 20. Following the merger, Mathews and

[1] The Complaint references and relies upon the Near/UHY audit engagement agreements and audit opinion letters, but these documents critical to Plaintiff's claims were omitted from the pleading. *See* Cplt. ¶¶ 2-4, 27, 46, 48, 53-55, 60. Plaintiff's reference to and reliance on these agreements and audit opinions permits the Court to consider them in their entirety on this motion to dismiss as being incorporated by reference. *See West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3d Cir. 2010) (noting that on a motion to dismiss a court may consider "documents that are *integral to or explicitly relied* upon in the complaint") (emphasis in original).

Rahul maintained their positions as CEO and CFO, respectively, in the post-merger Near entity and continued their round-tripping scheme. RJN Exhibit 3, Near's Form 8-K filed with the United States Securities and Exchange Commission, dated October 5, 2023; RJN Exhibit 1 ¶ 36. Near also continued to engage UHY to audit its financials, and Near's post-merger Audit Committee signed another engagement agreement with UHY containing a New York choice of law provision. Norris Decl. Exhibit C.

**<u>Federal Authorities' Investigations of Near</u>**

On or about September 29, 2023, Near's former Chief Revenue Officer, Jonathan Zorio, disclosed in a publicly filed discrimination complaint against Near North America, Inc. and Near Intelligence Holdings, Inc. that he had "regularly apprised the Near [Executive Leadership Team] of misstatements of fact and other irregularities in financial and customer reports . . . ," including "about accounting practices and the legality of Near's business relationships with key partners such as MobileFuse . . . ." RJN Exhibit 4, Complaint filed in the United States District Court for the Central District of California, *Zorio v. Near North America, Inc.*, Case No. 2:23-CV-08206-JLS-BFM. Following Zorio's public disclosures, Near announced on October 5, 2023 that its revenue may have been overstated and that its financial statements should not be relied on. Cplt. ¶ 57; RJN Exhibit 1 ¶ 34 n. 2; RJN Exhibit 2 ¶ 68; RJN Exhibit 3. Near filed for bankruptcy in December 2023.

On or about August 7, 2025, the United States Attorney's Office for the Southern District of New York unsealed its federal criminal indictment of Mathews, Rahul, and Harlan for their orchestration of the round-tripping fraud at Near. *See* RJN Exhibit 5, Federal Criminal Indictment filed in the United States District Court for the Southern District of New York, *United States v. Mathews, et al.*, Case No. SI 24 Cr. 630. Plaintiff's Amended Complaint against Mobile Fuse

corroborates the allegations in the Indictment, including that Harlan helped Mathews and Rahul "deceive Near's own internal controls and conceal the extent of the Near-Mobile Fuse relationship. Namely, the[y kept the fraud and Near officers' Mobile Fuse] investment hidden from Near personnel and outsiders" like UHY. RJN Exhibit 2 ¶ 37.

The indictment and Mobile Fuse Amended Complaint also make clear that Mathews and Rahul continued their round-tripping scheme at Near following the merger, through at least September 2023. RJN Exhibit 2 ¶ 42.

## V. LEGAL STANDARD

Courts regularly apply the *Wagoner* rule and the *in pari delicto* doctrine at the pleading stage to bar trustees' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See, e.g., Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1085 (2d Cir. 1995) (affirming dismissal under Rule 12(b)(1)). The *Wagoner* rule is a well-established rule of standing under New York state law, and provides that a bankruptcy trustee lacks standing to assert a "claim against a third party for defrauding a corporation with the cooperation of management" on behalf of "the guilty corporation." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118, 120 (2d Cir. 1991). As a standing doctrine, grounded in jurisdiction, Plaintiff bears the burden to demonstrate its entitlement to pursue its claims. *Pergament v. Amton Inc. (In re: PHS Group Inc.)*, 581 B.R. 16, 31 (Bankr. E.D.N.Y. 2018) (collecting cases).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) serves to test the sufficiency of the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding such a motion, the court reviews the complaint to determine whether a plaintiff has adequately pled facts sufficient to show "a plausible claim for relief" and to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010),

*cert. denied* 562 U.S. 1280 (2011); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In *Fowler*, the Third Circuit set forth a two-part analysis that courts must employ when deciding a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the reviewing court should separate the factual and legal elements of a claim, accepting the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *See id*. at 210-11. Second, the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). Although a court may be required to accept the well-pleaded factual allegations in the complaint as true for purposes of deciding a motion to dismiss, general, conclusory allegations "couched as [] factual allegation[s]" need not be credited. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (courts are not bound to accept as true a legal conclusion couched as a factual allegation and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (holding that a plaintiff is required to make a "showing rather than a blanket assertion of an entitlement to relief.").

Similarly, a claim may be dismissed if the allegations in the complaint, together with additional facts subject to judicial notice or incorporated by reference, demonstrate that the plaintiff has failed to state a claim or is otherwise not entitled to relief. *See Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to

dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Further, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001); *see also ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 828 (Del. Ch. 2009) (Delaware court applying New York law to grant an auditor's motion to dismiss under the *Wagoner* Rule/*in pari delicto* doctrine).

## VI. ARGUMENT

### A. Plaintiff Cannot Escape Imputation of the Bad Acts Committed by Near's Officers Both Before and After the Merger

To avoid imputation of the fraudulent acts of Near's own officers to the debtors in this case, and thus application of the *in pari delicto* doctrine to its claims against UHY, Plaintiff attempts to create a novel exception for itself that has neither factual nor legal support. Specifically, Plaintiff posits that it is standing in the shoes exclusively of KluedIn, the purported innocent and unsuspecting pre-merger SPAC, and thus the bad acts of Near's executives cannot be imputed to bar Plaintiff's claims here. But it is black letter law in Delaware, New York, and California that, upon completion of a merger, the separate existence of the corporate entities ceases and the surviving corporation retains all rights and property of the pre-merger entities, including their debts and liabilities. *See* Del. Bus. Corp. Code § 259 ("the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature . . ."; N.Y. Bus. Corp. Code § 906 (the "surviving" entity

possesses "all the rights, privileges, immunities, powers" of the old); Cal. Corp. Code § 1107(a) ("Upon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them.").[2]

Indeed, courts that have considered similar efforts to avoid imputation have repeatedly rejected them. For example, in *Nisselson v. Lernout*, 469 F.3d 143 (1st Cir. 2008), the bankruptcy trustee sued the corporate debtor's auditors, bankers, officers, directors, and others, then tried to overcome *in pari delicto* by arguing that, because the wrongful acts were committed by the officers and directors of the pre-merger corporation, the surviving corporation was not complicit, and therefore the wrongful acts could not be imputed to it. *Id*. at 143-44. The First Circuit, in affirming the district court's granting of defendant's motion to dismiss, held:

> [T]he trustee's reasoning is flawed; his analysis entirely overlooks that, pursuant to both the merger agreement and the governing law, *see* Del.Code Ann. tit. 8, § 259(a), upon the consummation of the merger Old Dictaphone vanished into thin air and New Dictaphone inherited all of Old Dictaphone's choses in action. Under the approved plan of reorganization incident to New Dictaphone's bankruptcy, those litigation rights were passed along once more—this time to the Trust (and, thus, to the trustee). *See* 11 U.S.C. § 541(a)(1). Because the lineage of the trustee's claims passes directly through New Dictaphone, any right that the trustee may have to assert those claims derives directly from New Dictaphone. This chain of descent means that the trustee—despite his protestations to the contrary—is not acting in the place and stead of Old Dictaphone but, rather, in the place and stead of New Dictaphone.
>
> *　　*　　*
>
> Given the line of descent delineated by operation of the corporation and bankruptcy laws, we think that the *in pari delicto* defense must be available to a defendant in

[2] Acknowledging this reality of corporate law, in his First Day Declaration, Near CFO John Faieta attests that Near, as the surviving entity, assumed the liabilities of KluedIn upon consummation of the merger. *See* RJN Exhibit 1 ¶ 28.

> an action by a bankruptcy trustee whenever that defense would have been available in an action by the debtor.
>
> * * *
>
> To summarize succinctly, L & H was the main player in the alleged fraud and its parlous behavior must be imputed lock, stock, and barrel to its offspring (New Dictaphone). It follows inexorably that New Dictaphone, in contemplation of law, bears at least as much responsibility for the asserted wrongdoing as any of the defendants

*Id*. at 153-57.

Similarly, here, the Plaintiff, as litigation trustee, stands in the shoes of the debtor Near, not the innocent pre-merger SPAC KluedIn, and the fraudulent acts committed at the pre-merger Near entities are imputed to Near as the surviving corporate entity. *See also Hale Bros. Inv. Co., LLC v. StudentsFirst Inst.*, 2017 WL 590255, at *3 (E.D. Cal. Feb. 14, 2017); *Maudlin v. Pac. Decision Scis. Corp.*, 137 Cal. App. 4th 1001, 40 Cal. Rptr. 3d 724 (2006) ("Surviving corporation in a merger does not enjoy a status like a bona fide purchaser for value without notice; rather, surviving corporation succeeds to all the rights and property of the disappearing corporation and is subject to all of its debts and liabilities in the same manner as if the surviving corporation had itself incurred them.").

Moreover, there is no dispute that the round-tripping fraud continued at Near following the merger, a material fact that Plaintiff has omitted from its Complaint in an attempt to avoid imputation of the fraudulent scheme. RJN Exhibit 1 ¶ 36; RJN Exhibit 3. This is an independent basis to impute the fraud to Near and dismiss the Complaint. In a separate adversary proceeding Plaintiff brought against MobileFuse for this same fraud (there, ironically, purporting to stand in the shoes of Near, not KluedIn), Plaintiff not only alleges that the fraudulent scheme continued at the surviving post-merger entity, it also concedes that Near acquired the subsidiary that is the "successor-in-interest" to the pre-merger Near entities as part of the merger. RJN Exhibit 2 ¶¶ 24,

42; *see also* RJN Exhibit 1 ¶ 25. Pursuant to the principle of "truthful pleading," Plaintiff's selective and contradictory allegations are not permitted. *See Cantu v. Resol. Tr. Corp*., 4 Cal. App. 4th 857, 877 (1992) (finding that a plaintiff may not avoid a motion to dismiss by "*plead[ing] facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false* . . . When the plaintiff pleads inconsistently *in separate actions*, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effects of a [motion to dismiss].") (emphasis in original) (internal citations omitted). *See also See In re General Motors (Hughes) Shareholder Litigation*, 897 A.2d 162, 168-70 (Del. 2006) (finding courts may consider other documents where a complaint "quoted only selected and misleading portions of such documents" and "[i]t is well established that a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law").

Plaintiff cannot avoid imputation of the fraud. Dismissal of Plaintiff's claims is, therefore, the correct result as a matter of law.

### B. The In Pari Delicto Doctrine Bars Plaintiff's Negligent Misrepresentation Claim Against UHY (Count 1)

#### i. New York law applies to Plaintiff's claims.

Because the fraudulent acts of Near's executives are imputed to the surviving post-merger entity, Plaintiff's claims against UHY are barred under the *in pari delicto* doctrine/*Wagoner* Rule.[3] However, although Plaintiff never specifically alleges in its Complaint that California law applies to its negligent misrepresentation claim, this appears to be what Plaintiff is suggesting given its

[3] As New York courts discuss the *Wagoner* rule interchangeably with the *in pari delicto* doctrine, so too does this Motion. The label derives from the Latin phrase *in pari delicto potior est conditio possidentis,* which admonishes that "in a case of equal or mutual fault . . . the condition of the defending party is the better one." *Nisselson*, 469 F.3d at 151 (citing Black's Law Dictionary 791 (6th ed.1990)).

attempts to manufacture tenuous connections between California and the alleged negligent misrepresentations by UHY in apparent further effort to avoid application of *in pari delicto*. *See, e.g.,* Cplt. ¶ 56 ("The SPAC's reliance on UHY's representations occurred solely in California"; "the SPAC always maintained its principal—and only—place of business in California"; "Near Holdco was a California-based enterprise"; UHY knew that its audits "and its associated representations would be transmitted to California for use by Near Holdco"). Thus, the threshold issue that this Court needs to decide is whether California or New York law applies to Plaintiff's claims. It need not detain the Court for long: New York law squarely applies.

For starters, all of UHY's audit engagement letters with Near, including the engagement letter signed by the post-merger Near Audit Committee, provides that New York law applies to any claims arising out of the services UHY provided to Near:

> This engagement letter and all services rendered hereunder shall be governed, construed, and enforced by the laws of the State of New York, without the need to resort to principles of conflicts of laws. Law shall apply to any legal or equitable proceeding that shall be instituted in any way arising out of this engagement letter, any obligations contained or allegedly contained herein, and all services rendered touching or relating in any way to the obligations of this engagement letter. All parties to this engagement consent to the exclusive jurisdiction of the federal and state courts located in New York and, more particularly, the state court located in New York County, New York and the federal court located in the Southern District of New York.

Norris Decl. Exhibits A-C. In keeping with the parties' expectations as evidenced by the audit engagement agreements, UHY's audit opinion letters also were issued from New York. *Id.* Exhibits D & E. Generally, "Delaware courts apply the parties' contractually chosen law to tort claims so long as the state of the chosen law bears the most significant relationship to the [events at issue] and the parties." *OpenGate Capital Group LLC v. Thermo Fisher Scientific Inc.*, 2014 WL 3367675 (D. Del. July 8, 2014).

In determining the most significant relationship to the events at issue, the Third Circuit has made clear that the factors enumerated in Restatement (Second) Conflicts of Laws §§ 6, 145, and 148 should all be considered by the Court, without one single section replacing or overriding the factors set forth in the others. *See Overland Leasing Group, LLC v. First Financial Corp*., 436 F. App'x 119 (3d Cir. 2011); *see also see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996) (noting "§ 148 does not limit us to the factors it explicitly lists" and finding substantive law of the state where defendant professionals performed the work would apply to fraud claims); *In re Nat'l Century Financial Enterprises, Inc*., 846 F.Supp.2d 828, 851 (S.D. Ohio 2012) ("courts typically start with the most particularized section . . . and then turn to the more general guidance in section 145 and the cornerstone principles of section 6"). When evaluating these factors in connection with "torts like negligence . . . , the Restatement gives substantial weight to the place of performance of the acts that were negligent . . . ." *In re. Am. Int'l Grp., Inc.*, 965 A.2d 763, 819 (Del. Ch. 2009). Here, there can be no doubt that these factors weigh heavily in favor of New York, where UHY is based, where all of the work UHY did on behalf of Near took place, where UHY signed the audit opinion letters and which clearly bears the most significant relationship to the allegations and claims relating to UHY's audits of Near.

With respect to § 6, which "prescribes several 'cornerstone' factors relevant to choosing the appropriate rule of law including 'the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,' 'the protection of justified expectations,' 'certainty, predictability and uniformity of result,' and 'ease in the determination and application of the law to be applied,'" all factors point to New York. *Overland*, 436 F. App'x at 122. UHY reasonably expected New York law to apply here given that all of its engagement agreements with pre- and post-merger Near entities have a clear provision requiring application of

New York law, New York law on the issue of accountant's liability in this situation is far more settled, certain, and predictable than California, and will thus be easier to apply, and New York has a compelling interest in regulating the professionals conducting business in its state. Indeed, many courts, including the Third Circuit, regularly find that the law of the state where the accountants are located should be applied in similar cases because that state has a compelling interest in regulating accountants' conduct. *See, e.g., id*. at 123; *HSA Residential Mortg. Services of Texas v. Casuccio*, 350 F.Supp.2d 352, 365-66 (E.D.N.Y. 2003) (conducting choice of law analysis for negligent misrepresentation claims and finding "it is unreasonable to allow Texas law, or any other law, to dictate the appropriate conduct for accountants or professionals vis-a-vis non-client third-parties where all of the events occurred in New York"); *In re Rospatch Sec. Litig*., 1992 WL 226912 (W.D. Mich. 1992) ("Michigan has a very strong interest in regulating the conduct of lawyers and accountants performing work for Michigan corporations within Michigan").

Section 145 similarly compels application of New York law. It provides that the court should weigh four factors in tort cases: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflicts of Laws § 145. As to the first factor, the injury here occurred in New York because that is where UHY's purported professional negligence occurred. *In re Kaiser Group Intern., Inc.*, 2010 WL 3271198 (Bankr. D. Del. Aug. 17, 2010) (finding, among other things, that Delaware was the place of injury because the alleged malpractice occurred in Delaware). The third factor is neutral because Near and KluedIn were both Delaware corporations headquartered in California, and UHY is a New York limited

partnership headquartered in New York. Evaluation of the second and fourth factors demonstrates that ***only*** New York has a connection to this matter because that is where ***all*** of UHY's work in connection with Near's audits was done. *See, e.g.,* Norris Decl. Exhibits A-E. The Complaint cites no facts that, accepted as true, would override the compelling connections to New York present in the current record. The Complaint's connections to California are solely based upon the allegations that Near was headquartered in California, the audits and related information were transmitted to Near in California, and that Near relied upon the alleged representations in California. Cplt. ¶ 56. Plaintiff never alleges any other connection to California and conspicuously fails to aver that any part of the audit work was conducted in California, because it cannot.

*In re. Am. Int'l Group*, 965 A.2d 763 (Del. Ch. 2009), is directly on point. There, derivative shareholders alleged that corporate executives engaged in a litany of misconduct that caused the corporation's financial statements to be materially misleading and overstate the value of the corporation by billions of dollars. The plaintiffs sued the corporation's auditor, PricewaterhouseCooper LLP ("PwC"), for malpractice and breach of contract, and PwC moved to dismiss. With respect to the claims against PwC, the Delaware court first applied the § 145 factors to determine whether New York or Delaware law should apply to the claims. In doing so, the court reasoned that New York law applied because:

> The Complaint avoids any fact pleading about where PWC did its work for AIG, . . . a fair reading of the Complaint and the documents it incorporated indicates that PWC performed most of its auditing services in New York, and performed no acts in Delaware that are relevant to the claims against it. In particular, PWC signed its audit letters relating to the financial statements that were later restated in New York . . . Indeed, the only fair inference is that PWC performed most of its work in New York or somewhere other than Delaware, as the Complaint alleges no actions of any kind in Delaware.

*Id*. at 819.

Similarly here, all of UHY's auditing services were performed in New York where it signed the audit opinion letters at issue. This is an inescapable inference from a fair reading of the Complaint and incorporated documents, including because – like the plaintiff in *AIG* - Plaintiff does not (and cannot) allege any actions of any kind in California.

Finally, Section 148 "highlights additional relevant factors to be considered in a conflict-of-laws analysis for actions concerning misrepresentation, including negligent misrepresentation, when a plaintiff's reliance took place at least in part in a state other than where the false representations were made." *Overland*, 436 F. App'x at122. These factors include: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement (Second) Conflicts of Laws § 148.

In *Overland*, the Third Circuit considered the factors in each of sections 6, 145, and 148 when affirming the grant of summary judgment in favor of accounting firms who were sued for malpractice and negligent misrepresentation of financial information in audited financial statements. Specifically, the Third Circuit determined that New York law would apply to appellant's claims because "appellees are accountants licensed in New York," "the alleged negligent misrepresentations of the Appellees are within the reports finalized at and disseminated from Appellees' offices in New York," and the individuals "performing the credit analysis for the transaction" on behalf of appellant were located in New York. *Id.* at 123. As noted above, one

factor the Third Circuit considered of particular importance in the case was pursuant to § 6: "Furthermore, while New Jersey has an interest in ensuring that companies that operate within its borders do not employ negligent accountants to audit their books, *New York has a compelling interest in applying its law in a predictable, uniform manner to activities by New York licensed accountants that occurred in New York* and that allegedly induced a company's New York employees to enter into a contract on behalf of their employer in which New York law was chosen as controlling." *Id*. (emphasis added).

The facts of this case similarly require application of New York law. Plaintiff has not alleged any link between California and the work UHY did on Near's audit, beyond repeatedly restating in various different ways that Near and KluedIn maintained their principal places of business in California and thus received the alleged negligent misrepresentations in California. *See* Cplt. ¶ 56. As such, the Court should apply New York law to Plaintiff's claims.

**ii. New York's In pari delicto/Wagoner Rule requires dismissal of the claim with prejudice**

As set forth above, New York law governs here, and thus, bars Plaintiff's claims.[4] Specifically, the *Wagoner* rule – a well-established rule of standing under New York state law[5] –

[4] While Plaintiff may contend that California law governs its claim for negligent misrepresentation, New York law squarely governs this claim under any credible analysis. *See Supra,* at III.A. *See also New Greenwich Lit. Trustee, LLC v. Citco Fund Servs. (Europe) B.V.*, 41 N.Y.S.3d 1, 6-9 (N.Y. App. Div. 2016) (applying New York law over Delaware law, and dismissing similar negligent misrepresentation claims against Madoff's former auditors); *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 83–85 (1994) (emphasizing the importance of the substantive law of the state in which the causes of action arose, rather than the law of the state of incorporation, to determine imputation); *In re ICP Strategic Income Fund, Ltd.*, 730 Fed. Appx. 78, 81 (2d Cir. Apr. 23, 2018) (affirming dismissal of claims against auditors under *in pari delicto*, rejecting application of the internal affairs doctrine and, instead, applying New York law, which had the most significant relationship).

[5] When applying New York law, Delaware courts similarly analyze these principles under the Second Circuit's *Wagoner* rule. *See In re. Am. Int'l Group*, 965 A.2d 763.

provides that Plaintiff as litigation trustee[6] may only "assert claims held by the bankruptcy corporation itself," and lacks standing to assert a "claim against a third party for defrauding a corporation with the cooperation of management" on behalf of "the guilty corporation." *Wagoner*, 944 F.2d at 118, 120. Plaintiff has failed to meet its burden to demonstrate its entitlement to pursue its claims.[7] *Pergament*, 581 B.R. at 31 (collecting cases).

*Wagoner*, which is symmetric to *in pari delicto* for all relevant purposes here,[8] derives from the "fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010) ("*Kirschner III*"). The rule mandates that courts will not intercede to resolve a dispute between two wrongdoers. As management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, *Wagoner* bars a trustee from suing for a wrong that he himself essentially took part in. *Id.*

---

[6] Although technically Plaintiff is no longer the "bankruptcy trustee," Plaintiff's function as litigation trustee is virtually identical, and courts do not draw a distinction when applying *Wagoner* against claims brought by litigation trustees. *See Kirschner v. Grant Thornton LLP*, No. 07 Civ. 11604, 2009 WL 1286326, at *5 n.12 (S.D.N.Y. Apr. 14, 2009) ("*Kirschner I*"), *affirmed*, 626 F.3d 673 (2d Cir. 2010) ("*Kirschner II*").

[7] Given Plaintiff's failure to identify which state's law the Court should apply to its negligent misrepresentation claim, UHY submits that the choice of law issue should be decided first and that it can be decided on a motion to dismiss under 12(b)(1) and 12(b)(6). If, however, the Court is not inclined to rule on the choice of law issue on the papers, UHY respectfully requests that the Court order the parties to conduct limited jurisdictional discovery and, thereafter supplement the briefs prior to a resolution of this motion.

[8] *Kirschner III*, 938 N.E.2d at 946 n.3.

Importantly, this doctrine "is so strong in New York" that "the defense applies even in difficult cases and should not be weakened by exceptions." *Id*. (cleaned up). For this reason, courts applying New York law—including courts in Delaware—routinely dismiss claims brought by bankruptcy trustees against the debtor's former auditors stemming from their alleged failure to detect pre-petition fraud. *See, e.g., Kirschner II*, 626 F.3d at 677 (granting motions to dismiss related to the *Refco* fraud); *In re Madoff Inv. Secs LLC*, 721 F.3d 54, 64 (2d Cir. 2013) (same, in Madoff); *In re Am. Int'l Grp.,* 965 A.2d at 827 (same, applying New York law related to the AIG misconduct).

Likewise, here, dismissal is the inevitable result where Plaintiff is standing in the shoes of Near to pursue state law claims against UHY. Indeed, *Wagoner* requires only a showing that Near's management were acting in the scope of employment when they committed their actions. If so, the misconduct is imputed to Near as a matter of law. *Kirschner III*, 938 N.E.2d at 950*; see also Feltman v. Kossoff & Kossoff LLP (In re: TS Emp't)*, 597 B.R. 543, 550 (Bankr. S.D.N.Y. 2019) (dismissing claims for misrepresentation and accounting malpractice against former auditors). Here, Near's executives committed their pervasive round-tripping scheme in the course of their employment, to artificially inflate revenues and seduce a buyer to overpay for the acquisition. *See* RJN Exhibit 1 ¶ 35. These fatal facts are corroborated by (i) Near's first day declaration—*see* RJN Exhibit 1 ¶¶ 34-36, (ii) RJN Exhibit 2, (iii) RJN Exhibit 3, and (iv) RJN Exhibit 5. *See also Kirschner III*, 938 N.E.2d at 951 ("When corporate officers carry out the everyday activities . . . such as issuing financial statements, . . . handling customer accounts, moving assets between corporate entities . . . their conduct falls within the scope of their corporate authority. . . . And where conduct falls within the scope of the agents' authority, everything they know or do is imputed to their principals") (cleaned up).

Moreover, the allegations in Plaintiff's Complaint would not support application of the single, "most narrow" exception to the presumption of imputation—the adverse interest exception. *See id*. at 952; *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 551 B.R. 732, 738 (S.D.N.Y. 2016) (collecting cases and emphasizing that the exception cannot apply where there is a benefit to both the agent and the corporation). Put simply, because Near received substantial benefits from the underlying fraud and Near's management did not "totally abandon" Near's interests, Plaintiff cannot rely on the adverse interest exception. *Kirschner III*, 938 N.E. at 952-53 ("So long as the corporate wrongdoer's fraudulent conduct enables the business to survive—to attract investors and customers and raise funds for corporate purposes—this test is not met.") Management's motives do not change this result, nor does the fact that the fraud caused Near to collapse into bankruptcy. *Id.*; *Kirschner I*, 2009 WL 1286326, at *6 (collecting cases, noting that "courts have identified the relevant issue as being the short term benefit or detriment to the corporation, not any detriment to the corporation resulting from the unmasking of the fraud") (cleaned up).[9]

The Litigation Trustee also cannot create a new exception by fiat because it ignores the effect of a merger and has no support under applicable law. *See In re MF Global Holdings Ltd.*, No. 14-1249, 611 Fed. Appx. 34, 36 (2d Cir. May 22, 2015) (affirming dismissal of claims against PwC under *Wagoner* rule, where, as here, litigation trustee sought to distinguish imputation based on timing of audits, reasoning that "[t]he case law makes no such distinction"); *Seitz v. Marcum*,

[9] New York law's refusal to extend liability to third parties under *Wagoner* is so strong that dismissal would also be compelled in the fictional scenario where UHY failed to satisfy professional audit standards. *Kirschner III*, 938 N.E.2d at 958-59 (rejecting various public policy arguments, recognizing that even if the auditors are also at fault, the "owners and creditors of KPMG and PwC may be said to be at least as innocent as Refco's unsecured creditors and AIG's stakeholders").

Index No. 153725/2021, 2024 WL 4032638, at *3-4 (Sup. Ct. N.Y. Aug. 30, 2024) (dismissing claims against auditor and rejecting similar defenses to imputation).

As described above, *Nisselson v. Lernout* is on all fours with this dispute. There, the First Circuit affirmed dismissal of the litigation trustee's claims of negligent misrepresentation and deceptive trade practices against an auditor that allegedly failed to detect its client's fraud. *Nisselson*, 469 F.3d 143. Again, applying Delaware corporate and bankruptcy law to the trustee's claims, the First Circuit held that, "upon the consummation of the merger Old Dictaphone vanished into thin air and New Dictaphone inherited all of Old Dictaphone's choses in action. . . . Old Dictaphone's innocence is irrelevant." *Id*. at 152-53 (cleaned up). The Court continued, noting that L & H was the main player in the alleged fraud and its bad acts must be fully imputed to its offspring (New Dictaphone). "It follows inexorably that New Dictaphone, in contemplation of law, bears at least as much responsibility for the asserted wrongdoing as any of the defendants." *Id.* at 157.

Accordingly, like the post-merger New Dictaphone trustee, KludeIn's offspring does "not have access to an 'innocent successor exception' as a way of shielding themselves from the operation of an *in pari delicto* defense." *Id.* at 156; *see also* Del. Bus. Corp. Code § 259(a) ("all property . . . shall be vested in the corporation surviving or resulting from such merger or consolidation"). Near's pre-merger corporate status and whomever were, or were not, its then-current agents are irrelevant to this dispute.

For these reasons, the *in pari delicto* doctrine bars Plaintiff's negligent misrepresentation claim, and it should be dismissed with prejudice, as any amendment could not overcome these fatal pleading defects.

### C. Plaintiff Fails to State a Claim for Unlawful, Unfair, and/or Fraudulent Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 (Count 2)

California's Unfair Competition Law ("UCL") is intended to protect business competitors and consumers by prohibiting (1) fraudulent, (2) unlawful, or (3) unfair business acts or practices. Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Each of these are separate and distinct theories of liability, or "prongs," and a business practice can violate one or each of these prongs. *See Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863-64 (C.D. Cal. 2022) (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554, 62 Cal.Rptr.3d 177 (2007)). While the UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law," Plaintiff cannot plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition. *See Cel-Tech*, 20 Cal. 4th at 180-82. Plaintiff has not and cannot adequately allege a claim under any of the three prongs of the UCL, and as such, Count 2 of its Complaint should be dismissed with prejudice.

#### i. Plaintiff fails to allege that UHY's conduct was unfair, fraudulent, or unlawful

While Plaintiff does not clearly state under which prong(s) it is seeking relief under the UCL, it appears from the allegations in Count 2, *see* Cplt. ¶¶ 76-79, that Plaintiff is attempting to allege a claim under the unfairness prong. For claims under the UCL's unfairness prong, courts consider: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (dismissing UCL claims under the

"unfairness" prong for the failure to satisfy any of the three tests and for plaintiffs' "conclusory recitation" of the UCL standards). Here, Plaintiff's Complaint fails to plead the "unfairness" prong with anything more than conclusory statements, and no allegations Plaintiff could plead would satisfy the various tests for unfairness.

With respect to the first test, which the Ninth Circuit calls the "tethering test," Plaintiff does not allege which public policy, constitutional provision, statute, or regulation UHY is alleged to have violated, much less one that violates antitrust law. *See Doe*, 982 F.3d at 1214–15; Cplt. ¶¶ 76-79. All Plaintiff has alleged in its Complaint are purported violations of GAAS, which are merely professional standards for the accounting industry. The third test is also not pled with anything more than a conclusory statement that "the justification for UHY's conduct is outweighed by the gravity of the consequences to the SPAC and the public at large." Cplt. ¶ 76. Finally, with respect to the second test, Plaintiff merely restates the test itself without including any specific allegations as to what conduct of UHY was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See id*. Moreover, courts have held that allegations related to accountants' audit activities, even if the audit was "possibly not proper," did not rise to the level of immoral, unethical, oppressive, unscrupulous or substantially injurious conduct of the kind required to allow recovery on an unfair business practices theory. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001).

Similarly to the Complaint here, the court in *Doe* found that the "complaint left the district court to guess what conduct Plaintiffs alleged satisfied the 'unfair' prong of the UCL," and plaintiffs' complaint only had a "conclusory recitation of one of the UCL's legal standards" which did "not clarify what conduct they claim is unfair," thus concluding that the complaint did not give proper notice of the claims or grounds on which they lie. *See Doe*, 982 F.3d at 1214–15. Even

though Plaintiff has three different ways it could plead unfairness, it fails to do anything more than make conclusory allegations that are a recitation of the standards without a single factual allegation about how any of the tests are met.

As to the "fraudulent" prong, Plaintiff must allege that the conduct is likely to deceive members of the public, which is evaluated from the vantage of a reasonable consumer. *See Nazemi*, 637 F. Supp. 3d at 863. Plaintiff must also plead that there is a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. The heightened pleading standard of Rule 9(b) applies to pleading this prong as well, such that the fraud is stated "with particularity the circumstances constituting fraud or mistake." *See id*. Here, Plaintiff does not plead any level of specificity around what the fraudulent business practice is, the who, what, when, where, and how of the fraudulent acts, how the fraudulent practice impacts the general public or targeted consumers, how it is likely to deceive members of the public, or any facts whatsoever, beyond a summarily stating that "such conduct has a tendency to deceive the SPAC and the public at-large." Plaintiff does not adequately plead, because it cannot, that the UCL's fraudulent prong is satisfied.

Finally, a claim under the unlawfulness prong attempts "to redress an unlawful business Practice [and] 'borrows' violations of other laws and treats [them] . . . as unlawful practices independently actionable." *Doe*, 982 F.3d at 1214. Plaintiff does not attempt to allege liability under the UCL's "unlawfulness" prong, as there is no independent statute cited in the Complaint that is specific to this Count. *See* Cplt. ¶¶ 76-79.

Given the utter lack of allegations in Count 2, it is clear that what Plaintiff is attempting to do here is "recast" its deficient negligent misrepresentation claim as a catch-all UCL claim, which it cannot do. *Cel-Tech*, 20 Cal. 4th at 180-82 (1999); *Jackson*, 273 F.3d at 1203.

**ii. Plaintiff fails to establish entitlement to equitable relief**

Pursuant to § 17203 of the UCL, the only remedies available for a violation of the code are equitable in nature, including an injunction against the violating conduct and restitution. Because it is a "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief, . . ." courts require plaintiffs to establish that they lack an adequate remedy at law in order to sufficiently state a UCL claim. *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974); *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834, 844 (2020). Plaintiff fails to make such a showing here. Indeed, nowhere in the Complaint does Plaintiff allege that it lacks an adequate remedy at law, as required. *See Sonner*, 971 F.3d at 844 (dismissing UCL claim for failure to allege that plaintiff lacks an adequate legal remedy); *O'Shea*, 414 U.S. at 502 (dismissing plaintiffs' complaint due to the "availability of other avenues of relief" and plaintiffs' failure to "establish the basic requisites of the issuance of equitable relief . . . [such as] the inadequacy of remedies at law.").

Moreover, Plaintiff does not even enumerate what kind of equitable relief is specifically sought, instead vaguely requesting "orders or judgments for restitution, injunctive relief, and any other relief the Court deems appropriate" without alleging what present or future harm Plaintiff seeks to enjoin or any restitution to which it would be entitled. It appears that any restitution Plaintiff seeks would merely be the same monetary damages it seeks via its negligent misrepresentation claim, but California courts do not permit such monetary damages and regularly dismiss UCL claims on this basis. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ("Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims," and to allow this would be to incentivize plaintiffs to "recast claims under traditional tort theories as UCL violations."); *Sugarman v. Brown*, 73 Cal. App. 5th

152, 164 (2021) (finding that there was not an appropriate basis for a UCL claim for restitution for allegedly inflated earning statements in SEC filings because "[t]he nonrestitutionary disgorgement remedy sought by plaintiff closely resembles a claim for damages, something that is not permitted under the UCL") (quoting *Korea Supply*).

Even if a claim for monetary damages was permissible under the UCL, Plaintiff still could not obtain restitution here because the California Supreme Court has made clear that an award for restitution "would not be restitutionary [if] it would not replace any money or property *that defendants took directly from plaintiff*." *Korea Supply*, 29 Cal. 4th at 1149 (emphasis added); *see also Hill v. Opus Corp.*, 464 B.R. 361, 394 (C.D. Cal. 2011) (finding restitution means "compelling a UCL defendant to return money obtained through an unfair business practice . . . to persons who had an ownership interest in the property"). Here, not only does Plaintiff fail to allege that UHY took anything directly from Plaintiff by means of its unfair, fraudulent or unlawful conduct, it fails to allege (because it cannot) that UHY received *any* benefit as a result of the purported bad acts. *See generally Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 456-57 (2005) (holding that plaintiff was not entitled to restitution under the UCL where defendants did not receive any profits as a result of the alleged violations). These failures cannot be cured by amendment, so Count 2 of Plaintiff's Complaint should be dismissed with prejudice.

## VII. CONCLUSION

For the foregoing reasons, UHY respectfully requests that the Court dismiss Plaintiff's state law claims (Counts 1 and 2) with prejudice.

Dated: December 23, 2025

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Richard M. Beck*
Richard M. Beck (DE Bar No. 3370)
Sally E. Veghte (DE Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 552-5501
Email: rbeck@klehr.com
sveghte@klehr.com

**VEDDER PRICE LLP**
Michael J. Quinn (admitted *pro hac vice*)
1925 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (424) 204-7734
E-mail: mquinn@vedderprice.com

**VEDDER PRICE LLP**
William W. Thorsness (admitted *pro hac vice*)
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7595
E-mail: wthorsness@vedderprice.com

*Attorneys for Defendant UHY LLP*