**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:**<br><br>**NEAR INTELLIGENCE, INC., *et al.*,**<br><br>**Debtors.**[1] | **Chapter 11**<br><br>**Case No. 23-11962 (TMH)**<br><br>**(Jointly Administered)** |
| **DRIVETRAIN, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., et al., Litigation Trust,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UHY LLP,**<br><br>**Defendant.** | **Adversary Proceeding No. 25-52378 (TMH)** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**COUNTS 1 AND 2 OF PLAINTIFF'S COMPLAINT**


PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (DE Bar No. 4142)
Beth E. Levine (*pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE 19899
(302) 652-4100
bsandler@pszjlaw.com
blevine@pszjlaw.com
pkeane@pszjlaw.com

REID COLLINS & TSAI LLP
Eric D. Madden (*pro hac vice*)
Brandon V. Lewis (*pro hac vice*)
Brian J. Bah (*pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
(214) 420-8900
emadden@reidcollins.com
blewis@reidcollins.com
bbah@reidcollins.com

*Counsel for Plaintiff Drivetrain, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., et al. Litigation Trust*


Dated: February 18, 2026

---

[1] The Debtors in these chapter 11 cases are Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd.

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

NATURE AND STAGE OF THE PROCEEDING .......... 2

SUMMARY OF ARGUMENT .......... 3

COUNTER-STATEMENT OF FACTS .......... 3

ARGUMENT .......... 7

I. LEGAL STANDARD .......... 7

II. UHY IMPERMISSIBLY RELIES ON DOCUMENTS OUTSIDE THE PLEADINGS .......... 8

A. The Trustee Objects to UHY's Exhibits 1, 3, 4, and 5. .......... 9

B. The Trustee Objects to UHY's Exhibits A-C. .......... 10

III. NEITHER *WAGONER* NOR *IN PARI DELICTO* BARS THE TRUSTEE'S CLAIMS. .......... 12

A. *Wagoner* Does Not Apply. .......... 12

B. *In Pari Delicto* Does Not Bar the Trustee's Claims. .......... 13

1. Corporate separateness blocks imputation to the SPAC. .......... 14

2. The adverse interest exception blocks imputation to the SPAC. .......... 18

a. California law governs UHY's *in pari delicto* defense. .......... 18

b. California's adverse interest exception blocks imputation. .......... 25

IV. THE COMPLAINT ALLEGES A PLAUSIBLE CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW. .......... 26

A. The Complaint Sufficiently Alleges UHY's Unlawful and Unfair Conduct. .......... 27

B. The Complaint Sufficiently Alleges Entitlement to Equitable Relief. .......... 29

CONCLUSION .......... 30

# TABLE OF AUTHORITIES

**Cases**

*Apple Am. Grp., LLC v. GBC Design, Inc.*,
294 F. Supp. 3d 414 (W.D. Pa. 2018) ....11

*Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*,
834 F.3d 651 (6th Cir. 2016) .... 13

*Bechtel v. Robinson*,
886 F.2d 644 (3d Cir. 1989) .... 30

*Berg Chilling Sys., Inc. v. Hull Corp.*,
435 F.3d 455 (3d Cir. 2006) .... 19, 21

*Black v. Montgomery Cnty.*,
835 F.3d 358 (3d Cir. 2016) .... 7

*Carickhoff v. Goodwin (In re Decade, S.A.C., LLC)*,
635 B.R. 735 (Bankr. D. Del. 2021) .... 18, 20, 21

*CarrAmerica Realty Corp. v. Nvidia Corp.*,
302 F. App'x 514 (9th Cir. 2008) .... 13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) .... 26

*Cooney v. Osgood Mach., Inc.*,
612 N.E.2d 277 (N.Y. 1993) .... 19

*Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*,
658 B.R. 783 (D. Del. 2024) .... 16

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) .... 7, 8

*Fluor Enters. v. Orion Refin. Corp. (In re Orion Refin. Corp.)*,
341 B.R. 476 (Bankr. D. Del. 2006) .... 19, 20

*Foman v. Davis*,
371 U.S. 178 (1962) .... 30

*Freedom Gold USA LLC v. Bank of Am., N.A.*,
2024 WL 5368652 (C.D. Cal. Nov. 15, 2024) .... 27

*French v. Banana Republic LLC*,
2024 WL 4682312 (N.D. Cal. Nov. 4, 2024) .... 29

*Golden State TD Invs., LLC v. Andrews Kurth LLP (In re Cal. TD Invs. LLC)*,
489 B.R. 124 (Bankr. C.D. Cal. 2013) ........ 26

*Hanna v. Palisades Prop. & Cas. Ins. Co.*,
2023 WL 4110067 (E.D. Pa. June 21, 2023) ........ 11

*Hirsch v. Bank of Am.*,
132 Cal. Rptr. 2d 220 (Cal. Ct. App. 2003) ........ 30

*Hood-Anderson v. New Castle Cnty.*,
2026 WL 91492 (D. Del. Jan. 13, 2026) ........ 11

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
679 F. Supp. 2d 395 (S.D.N.Y. 2009) ........ 15

*In re Am. Int'l Grp., Inc. Consol. Deriv. Litig.*,
965 A.2d 763 (Del. Ch. 2009) ........ 23

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ........ 7, 11

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018) ........ 10

*Kaiser Grp. Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Grp. Int'l Inc.)*,
2010 WL 3271198 (Bankr. D. Del. Aug. 17, 2010) ........ 22, 23

*Kraus v. Trinity Mgmt. Servs., Inc.*,
999 P.2d 718 (Cal. 2000) ........ 29

*Lepore v. SelectQuote Ins. Servs., Inc.*,
2023 WL 8469761 (3d Cir. Dec. 7, 2023) ........ 11, 12

*McHale v. Silicon Valley L. Grp.*,
2011 WL 6990187 (N.D. Cal. Dec. 14, 2011) ........ 15, 25, 26

*MicroTechnologies, LLC v. Autonomy, Inc.*,
2018 WL 4538782 (N.D. Cal. Sept. 21, 2018) ........ 26

*Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*,
2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019) ........ 8, 9, 10

*Moratzka v. Morris (In re Senior Cottages of Am., LLC)*,
482 F.3d 997 (8th Cir. 2007) ........ 13

*Mull Drilling Co. v. SemCrude, LP (In re SemCrude, LP)*,
407 B.R. 82 (Bankr. D. Del. 2009) ........ 18

*Nantucket Inv. II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*,
61 F.3d 197 (3d Cir. 1995) .......... 8, 9

*Nieves v. Insight Bldg. Co.*,
2020 WL 4463425 (Del. Ch. Aug. 4, 2020) .......... 15

*Nisselson v. Lernout*,
469 F.3d 143 (1st Cir. 2006) .......... 16, 17, 18

*Novartis Pharms. Corp. v. MSN Pharms. Inc.*,
2024 WL 4723274 (D. Del. Nov. 8, 2024) .......... 10

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001) .......... 13

*Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt PLC)*,
2024 WL 206682 (Bankr. D. Del. Jan. 18, 2024) .......... 9

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000) .......... 9, 10

*Overland Leasing Grp., LLC v. First Fin. Corp.*,
436 F. App'x 119 (3d Cir. 2011) .......... 23

*Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
710 F. Supp. 2d 458 (D. Del. 2010) .......... 19, 20, 24, 25

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) .......... 24

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018) .......... 28

*Pilot Corp. v. Abel*,
2023 WL 8643195 (Del. Ch. Dec. 13, 2023) .......... 17

*Plan Adm'r v. 225 Bowery Mezz Lender LLC (In re 225 Bowery LLC)*,
2025 WL 2445879 (Bankr. D. Del. Aug. 25, 2025) .......... 7, 9

*Potter v. Cozen & O'Connor*,
46 F.4th 148 (3d Cir. 2022) .......... 7

*Robinson Helicopter Co. v. Dana Corp.*,
102 P.3d 268 (Cal. 2004) .......... 24

*Sandoval v. Uphold HQ Inc.*,
2025 WL 1268291 (S.D.N.Y. May 1, 2025) .......... 16

*Saunders v. Superior Ct.*,
33 Cal. Rptr. 2d 438 (Cal. Ct. App. 1994) .................... 27

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991) .................... 12, 13

*Shersher v. Superior Ct.*,
65 Cal. Rptr. 3d 634 (Cal. Ct. App. 2007) .................... 30

*Snowman v. FCA US LLC*,
2025 WL 3251311 (D. Del. Nov. 21, 2025) .................... 29

*Stanley Black & Decker, Inc. v. Gulian*,
70 F. Supp. 3d 719 (D. Del. 2014) .................... 20, 21, 24

*State ex rel. Harris v. PricewaterhouseCoopers*,
23 Cal. Rptr. 3d 529 (Cal. Ct. App. 2005) .................... 27, 28

*State ex rel. Herrera v. Stender*,
152 Cal. Rptr. 3d 16 (Cal. Ct. App. 2012) .................... 28

*Teamsters Loc. 237 Welfare Fund v. Astrazeneca Pharms. LP*,
2015 WL 4111826 (Del. Super. Ct. July 8, 2015) .................... 19, 20

*United States v. Bestfoods*,
524 U.S. 51 (1998) .................... 16

*Wells Fargo Bank, N.A. v. First Republic Bank (In re Salander)*,
503 B.R. 559 (S.D.N.Y. 2013) .................... 14

**Statutes and Regulations**

CAL. BUS. & PROF. CODE § 5062 .................... 28

CAL. BUS. & PROF. CODE § 17200 .................... 27

CAL. CODE REGS., tit. 16 § 58 .................... 28

**Rules**

FED R. CIV. P. 12 .................... 7

FED R. CIV. P. 15 .................... 30

FED. R. EVID. 201 .................... 10

**Other Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF L. § 6 ........................................................................ 24

RESTATEMENT (SECOND) OF CONFLICT OF L. § 145 .......................................................... 19, 22, 24

RESTATEMENT (SECOND) OF CONFLICT OF L. § 148 ............................................................... *passim*

**PRELIMINARY STATEMENT**

For all its bluster, UHY's Motion to Dismiss attacks a strawman.[1] UHY misinterprets the Complaint's allegations, misidentifies the relevant parties, and misconstrues the underlying transactions.[2] Correcting these errors causes UHY's arguments for dismissal to collapse.

This action arises from UHY's misrepresentations concerning its client's financial position. Compl ¶ 1. UHY misrepresented to KludeIn I Acquisition Corp. (the "SPAC") that the financial statements of UHY's client, Near Intelligence Holdings, Inc. ("Near Holdco"), were free of any material misstatements. *Id.* ¶ 2. In reality, those financial statements concealed a long-running round-tripping scheme that UHY's faulty audit failed to identify. *Id.* The SPAC relied on UHY's misrepresentations to acquire Near Holdco and, as a result, suffered $400 million in losses and collapsed into bankruptcy. *Id.* ¶ 55. As the representative of the SPAC's bankruptcy estate, the Trustee now brings six causes of action against UHY, including for negligent misrepresentation (Count 1) and violations of California's Unfair Competition Law (Count 2). *Id.* ¶¶ 68-100. UHY's Motion to Dismiss challenges only Count 1 and Count 2.

UHY argues that Count 1 should be dismissed for lack of standing under the Second Circuit's *Wagoner* rule and because *in pari delicto* immunizes UHY from liability. Neither argument has merit. The *Wagoner* rule does not apply in the Third Circuit, and UHY's *in pari delicto* argument confuses and conflates the entities at issue. More specifically, UHY misunderstands—and thus misrepresents—the relationship between the SPAC and Near Holdco, and UHY leverages that misunderstanding to concoct an *in pari delicto* defense.

---

[1] The Motion to Dismiss comprises (1) *Defendant UHY LLP's Memorandum in Support of Its Motion to Dismiss Counts 1 and 2 of Plaintiff's Complaint* ("Def. Brief") [D.I. 13], (2) *Declaration of Scott Norris* [D.I. 14], and (3) *Defendant UHY LLP's Request for Judicial Notice* [D.I. 15].

[2] Capitalized terms not otherwise defined have the meanings assigned in Plaintiff's Complaint (the "Complaint" or "Compl.") [D.I. 2].

According to UHY, "the separate corporate entities of [the SPAC] and Near [Holdco] ceased to exist upon completion of the de-SPAC merger." Def. Br. at 2. This is false. UHY also boldly asserts that "the debtor represented by Plaintiff here" was the "surviving corporation" in that merger. *Id.* UHY is wrong again. Both assertions not only are false, they also contradict the express allegations in the Complaint, which make clear that the SPAC did not merge with anyone; its subsidiaries did. Compl. ¶ 20. Consequently, UHY's carping about what did or did not survive the "de-SPAC merger" is irrelevant to the viability of the Trustee's claims.

Contrary to UHY's error-filled Motion to Dismiss, UHY made misrepresentations to the SPAC; Near Holdco merged with and into the SPAC's subsidiaries; the SPAC maintained its corporate independence; and the SPAC later changed its name to "Near Intelligence, Inc." *Id.* ¶¶ 1, 20. None of those events nor the other allegations in the Complaint permit UHY to impute any wrongdoing at Near Holdco to the SPAC. What's more, California's adverse interest rule serves as an additional bar to imputation. UHY's *in pari delicto* defense is therefore groundless.

UHY argues that Count 2 should be dismissed because (a) violations of professional standards are not actionable under California's Unfair Competition Law ("UCL") and (b) the Trustee has failed to establish entitlement to equitable relief. Both arguments fail—the first ignores on-point California case law, and the second makes demands not required at the pleading stage.

Accordingly, the Court should deny UHY's Motion to Dismiss in its entirety.

**NATURE AND STAGE OF THE PROCEEDING**

The Trustee does not dispute UHY's procedural synopsis, *see* Def. Br. at 4-5, but would note three important clarifications. There were four Debtors in these chapter 11 cases: the SPAC (a/k/a Near Intelligence, Inc. and f/k/a KludeIn I Acquisition Corp.); Near Intelligence, LLC; Near North America, Inc.; and Near Intelligence Pte. Ltd. Compl. at 1 n.1. The chapter 11 cases were

never substantively consolidated. *Id.* ¶ 5. And Counts 1 and 2 of the Complaint formerly belonged to the SPAC. *Id.* ¶¶ 5, 69, 76.

## <u>SUMMARY OF ARGUMENT</u>

Counts 1 and 2 of the Complaint state plausible claims for relief.

1. Count 1 is not subject to UHY's standing arguments under the Second Circuit's *Wagoner* rule. The Third Circuit has rejected the *Wagoner* rule, and this Court should do the same.

2. Count 1 also survives UHY's challenge under Federal Rule of Civil Procedure 12(b)(6). UHY does not dispute that Count 1 states a plausible claim for relief and instead argues only that the face of the Complaint establishes the affirmative defense of *in pari delicto*. UHY's argument fails because the doctrine of corporate separateness and California's adverse interest exception bar the imputation of the Near Insiders' wrongful conduct to the SPAC. Because UHY has no basis in law or fact to impute wrongdoing to the SPAC, its *in pari delicto* defense fails.

3. Count 2 alleges plausible claims for relief under the UCL. Count 2 alleges the necessary elements, satisfies the relevant pleading standards, and gives UHY fair notice of the claims against it. The Complaint also sufficiently alleges the Trustee's entitlement to equitable relief.

## <u>COUNTER-STATEMENT OF FACTS</u>

There are numerous factual errors in UHY's Motion to Dismiss.[3] Rather than attempt to correct them all, the discussion below provides merely a roadmap of the Complaint and rectifies the confusion animating most of the Motion to Dismiss.

On March 23, 2023, the SPAC acquired Near Holdco (the "<u>Acquisition</u>"). Compl. ¶ 20. This action is based on events leading to the Acquisition. *Id.* ¶¶ 4, 34, 54-55. The SPAC was a

[3] The Motion to Dismiss also improperly relies on the contents of documents outside the Complaint. The Trustee's objections to the Court's consideration of these extraneous documents are presented in Section II below.

special purpose acquisition company based in California. *Id.* ¶¶ 12-13. Its acquisition target was Near Pte. Ltd. ("Old Near"), which in February 2022 reorganized as Near Holdco, a Delaware corporation based in California. *Id.* ¶ 19. Near Holdco retained UHY to audit its financial statements in connection with the Acquisition. *Id.* ¶¶ 22-23. UHY knew that the purpose of its audits of Old Near and Near Holdco was for the Acquisition and that the SPAC would be receiving and relying on the accuracy of these audits. *Id.* ¶¶ 24-25, 28, 34.

The "clean" audit opinions that UHY issued to Near Holdco—and on which the SPAC relied—were not accurate. *Id.* ¶ 53. Unbeknownst to the SPAC, three executives at Old Near and Near Holdco—Anil Mathews, Rahul Agarwal, and Shobhit Shukla (the "Near Insiders")—were engaged in fraudulent activity that included a round-tripping arrangement with a company ("MobileFuse") in which the Near Insiders had a 10% stake. *Id.* ¶¶ 16-18. UHY failed to detect any of this fraudulent activity. *Id.* ¶¶ 35-53. Relying on UHY's faulty audit opinions, the SPAC acquired Near Holdco, paying more than $400 million in consideration to acquire a company riddled with fraud that rendered it valueless. *Id.* ¶¶ 54-55, 62.

UHY's Motion to Dismiss warps these facts in two ways: (1) misdescribing the Acquisition; and (2) misidentifying the relevant entities in the Acquisition.

First, despite UHY's repeated claims to the contrary, ***no entity merged with the SPAC***. Rather, Near Holdco became a wholly owned ***subsidiary of the SPAC*** in two steps. Near Holdco first merged with the SPAC's wholly owned subsidiary corporation ("Merger Sub 1"), with Near Holdco as the surviving entity. *Id.* ¶ 20. Next, Near Holdco merged into the SPAC's other wholly subsidiary—a limited liability company—and that LLC ("Merger Sub 2") was the surviving entity. *Id.* Near Holdco ceased to exist and the surviving subsidiary changed its name to "Near Intelligence, LLC." *Id.* Upon completion of the Acquisition, the SPAC changed its name to "Near

Intelligence Inc." *Id.* Thus, in the Acquisition, Near Holdco disappeared into Near Intelligence, LLC, the wholly owned subsidiary of Near Intelligence, Inc. To illustrate:









Second, UHY repeatedly confuses the relevant entities, with many of these mistakes stemming from its definition of "Near" as a single entity—Near Intelligence, Inc.—when this action, in fact, concerns three entities with "Near" in their names: Old Near, Near Holdco, and Near Intelligence, Inc. (the SPAC). *See* Def. Br. at 1. UHY's other key errors include:

- UHY misidentifies the "Near" entity of which the Near Insiders were agents when they began their self-dealing scheme in 2021. *See* Def. Br. at 5. In January 2021, the Near Insiders were officers of Old Near; they had no affiliation with the SPAC. Compl. ¶¶ 17-18. In fact, they had no affiliation with the SPAC prior to the Acquisition. *Id.* ¶¶ 16, 57.

- UHY incorrectly asserts that the SPAC made round-tripping payments with MobileFuse. *See* Def. Br. at 5. The Complaint makes clear, however, that Old Near and Near Holdco—not the SPAC—made the round-tripping payments. Compl. ¶¶ 17, 43, 47, 50-53. The Complaint does not allege that the SPAC made (or received) any such payments, and UHY has no evidence otherwise.

- UHY incorrectly asserts it "was retained to act as the independent auditor to" Near Intelligence, Inc. Def. Br. at 6. UHY was retained by Near Holdco. Compl. ¶¶ 28-29.
- UHY incorrectly asserts that Anil Mathews and Rahul Agarwal "maintained their positions as CEO and CFO" of the SPAC after the Acquisition. Def. Br. at 7. Neither Mathews nor Agarwal held any position at the SPAC prior to the Acquisition. It was only after the Acquisition that the SPAC board of directors, unaware of the round-tripping scheme, appointed them as officers of the SPAC. Compl. ¶¶ 16, 57.

## ARGUMENT

### I. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) must be denied unless "the complaint fails to establish a prima facie claim for relief on its face." *Plan Adm'r v. 225 Bowery Mezz Lender LLC (In re 225 Bowery LLC)*, 2025 WL 2445879, at *1 (Bankr. D. Del. Aug. 25, 2025) A court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016), *as amended* (Sept. 16, 2016). Motions to dismiss for lack of prudential standing are to be reviewed under Rule 12(b)(6) standards. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022). "The proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citing *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175-76 & n.9 (3d Cir. 2015)).

As a general matter, a court ruling on a motion to dismiss "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may consider outside documents if they are "integral to or explicitly relied upon in the complaint." *In re 225 Bowery LLC*, 2025 WL 2445879, at *4 (quoting *Burlington Coat*, 114 F.3d at 1426). But "[w]hen the truth of facts in an 'integral' document are contested by

the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342. Furthermore, "[i]f a court takes judicial notice of a document, '[t]he fact that a document is included in the relevant record does not mean that the bankruptcy judge . . . is entitled to use it for any purpose.'" *Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*, 2019 WL 4447545, at *12 (Bankr. D. Del. Sept. 16, 2019) (quoting *Nantucket Inv. II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 205 (3d Cir. 1995)).

## II. UHY IMPERMISSIBLY RELIES ON DOCUMENTS OUTSIDE THE PLEADINGS.

UHY's Motion to Dismiss relies on documents outside the Complaint to dispute the Complaint's allegations. *See, e.g.*, Def. Br. at 4-8 & n.1. This is, of course, improper, and the Trustee objects to UHY's attempt to add layers of (incorrect) information onto the Complaint. Specifically, the Trustee objects to the Court's consideration of following documents:

| Extraneous Document | Objection |
|---|---|
| *Declaration of John Faieta in Support of Chapter 11 Petition and First Day Pleadings* [D.I. 15-1] | Subject to reasonable dispute and therefore does not qualify for judicial notice. |
| *Near Intelligence, Inc. Form 8-K* [D.I. 15-3] | Judicial notice of document for only limited purposes, and statements therein cannot be considered for their truth. |
| Complaint filed in *Zorio v. Near North America, Inc.*) [D.I. 15-4] | Subject to reasonable dispute and therefore does not qualify for judicial notice. |
| Criminal Indictment filed in *United States v. Mathews, et al.*) [D.I. 15-5] | Subject to reasonable dispute and therefore does not qualify for judicial notice. |
| March 25, 2022 Engagement Letter [D.I. 14-1] | Neither "relied upon by" nor "integral to" the Complaint. |
| December 14, 2022 Engagement Letter [D.I. 14-2] | Neither "relied upon by" nor "integral to" the Complaint. |
| March 23, 2023 Engagement Letter [D.I. 14-3] | Neither "relied upon by" nor "integral to" the Complaint. |

**A. The Trustee Objects to UHY's Exhibits 1, 3, 4, and 5.**

In one of its filings, UHY requests that this Court take judicial notice of four court records and one SEC filing that UHY attaches as Exhibits 1-5.[4] As the Motion to Dismiss makes plain, however, UHY is not merely asking the Court to acknowledge the existence of these documents, but also to accept their contents as true.[5] UHY's request is therefore improper, and the Trustee objects to the Court's consideration of Defendant's Exhibits 1 and 3-5. *See In re Our Alchemy, LLC*, 2019 WL 4447545, at *12 (explaining in the context of judicial notice, that a "previously filed court document will generally not be competent evidence of the truth of the matters asserted therein" (quoting *In re Indian Palms Assocs.*, 61 F.3d at 205)).

Regarding Exhibit 1 (*Declaration of John Faieta in Support of Chapter 11 Petition and First Day Pleadings*) [D.I. 15-1], "[t]he [First Day] Declaration's assertions of fact are just that: mere assertions. Because assertions of fact are subject to dispute until a judicial determination, they do not meet the standard for judicial notice." *In re 225 Bowery LLC*, 2025 WL 2445879, at *5.

Regarding Exhibit 3 (*Near Intelligence, Inc. Form 8-K*) [D.I. 15-3], while "SEC filings may be considered on a motion to dismiss to show that certain statements were made in those filings, they cannot be considered for the truth of those statements." *Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt PLC)*, 2024 WL 206682, at *16 (Bankr. D. Del. Jan. 18, 2024). The case law cited by UHY, *see* D.I. 15 at 2, is in accord. *See, e.g.*, *Oran v.*

[4] *See* D.I. 15.

[5] The Trustee does not object to the Court's taking judicial notice of its complaint in a separate adversary proceeding. *See* D.I. 15-2. But again, taking judicial notice of a filing does not layer that filing's contents into this lawsuit. That the Trustee sued MobileFuse in a separate action has no impact on whether the Complaint states plausible claims for relief.

*Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (courts may take judicial notice of SEC filings only to determine what those documents stated, not for their truth).

Lastly, the allegations in Exhibit 4 (Complaint filed in *Zorio v. Near North America, Inc.*) [D.I. 15-4] and Exhibit 5 (Criminal Indictment filed in *United States v. Mathews, et al.*) [D.I. 15-5] are not "competent evidence of the truth of the matters asserted therein." *See, e.g.*, *In re Our Alchemy, LLC*, 2019 WL 4447545, at *12 ("Although a court may consider judicially noticeable facts on a motion to dismiss, the contents of the State Court Complaint . . . are not such a fact."); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1134 n.10 (S.D. Cal. 2018) ("It is acceptable for courts to notice the indictment only as to evidence of the crime charged, not the truth of the matters asserted therein."). Their hearsay contents are, by their very nature, "subject to reasonable dispute" and do not qualify for judicial notice. FED. R. EVID. 201.

Accordingly, the Trustee objects to the Court's consideration of Exhibits 1, 3, 4, and 5 [D.I. 15-1, D.I. 15-3, D.I. 15-4, D.I. 15-5] when deciding UHY's Motion to Dismiss.

### B. The Trustee Objects to UHY's Exhibits A-C.

UHY also asks the Court to consider five other, extraneous documents: Exhibits A-E to the *Declaration of Scott Norris* [D.I. 14]. Buried in a footnote, UHY's request argues that these documents qualify for consideration under the Third Circuit's "integral exception" doctrine. *See* Def. Br. at 6 n.1. As an initial matter, "[a]rguments in footnotes are forfeited." *Novartis Pharms. Corp. v. MSN Pharms. Inc.*, 2024 WL 4723274, at *4 (D. Del. Nov. 8, 2024) (citing *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023)). Regardless, only Exhibits D and E are arguably integral to the Complaint. Exhibits A, B, and C are not.

Exhibits D and E [D.I. 14-4, 14-5] are the audit opinions that contain UHY's negligent misrepresentations to the SPAC. The Trustee acknowledges that Exhibits D and E are integral to

the Complaint. Exhibits A-C, on the other hand, do not qualify under the Third Circuit's "integral exception" doctrine or any other doctrine that would allow their consideration here.

Exhibits A-C [D.I. 14-1, 14-2, 14-3] are audit engagement letters. UHY insists that they are "integral to or explicitly relied upon" in the Complaint based on two oblique references—one in Complaint paragraph 27, which mentions "UHY issued its engagement letter to Near Holdco in March 2022," and the other in paragraph 48, which states, "Near Holdco reengaged UHY to audit its financial statements for the year ending December 31, 2022." *See* Def. Br. at 6 n.1 (citing Compl. ¶¶ 27, 48). Neither allegation transforms Exhibits A-C into documents "integral to or explicitly relied upon in the complaint." *Burlington Coat*, 114 F.3d at 1426.

First, Third Circuit courts have made clear that a pleading's general reference to an outside document does not make that document integral to, or explicitly relied upon by, that pleading. *See, e.g.*, *Apple Am. Grp., LLC v. GBC Design, Inc.*, 294 F. Supp. 3d 414, 427-28 (W.D. Pa. 2018) (holding that contract was neither "relied upon by" nor "integral to" complaint that made reference to parties entering contract when claims were not based on contract).[6] Here, the Complaint makes only a general, passing reference to Exhibit A, merely references the engagement contemplated by Exhibit B, and makes no reference to Exhibit C or the engagement contemplated therein.

Second, as explained by the Third Circuit, for a document to be "integral" to a pleading, claims must "depend on [the document's] contents, such as when those contents establish the right that the plaintiff claims was infringed or when they constitute the unlawful conduct for which the plaintiff seeks to recover." *Lepore v. SelectQuote Ins. Servs., Inc.*, 2023 WL 8469761, at *2 (3d

---

[6] *See also Hood-Anderson v. New Castle Cnty.*, 2026 WL 91492, at *8 (D. Del. Jan. 13, 2026) (concluding that single reference to security video did not make video integral to complaint); *Hanna v. Palisades Prop. & Cas. Ins. Co.*, 2023 WL 4110067, at *4 (E.D. Pa. June 21, 2023) (holding that complaint making descriptive "refer[ences] to certain facts such as Plaintiffs' statements given in initial interviews with Defendant" did not make external documents such as coordinating transcripts "integral to or explicitly relied upon in the complaint").

Cir. Dec. 7, 2023) (nonprecedential) (collecting cases). Here, Exhibits A-C do not meet that threshold. The Complaint does not "depend on" the contents of Exhibits A-C, those documents do not "establish the right[s]" that the Trustee seeks to enforce, and those documents have no bearing on whether UHY's misrepresentations were negligent or otherwise unlawful. UHY's duty to the SPAC not to make negligent misrepresentations and not to violate the UCL arose, respectively, at common law and per statute. Those duties and their breach exist independent of any terms in Exhibits A-C.[7] Accordingly, "the contents of [Exhibits A-C] are inessential to the articulation of [the Trustee's] claims," and as such, they "are not 'integral'" to the Complaint. *Lepore*, 2023 WL 8469761, at *3.

The Trustee therefore objects to the Court's consideration of Exhibits A, B, and C [D.I. 14-1, 14-2, 14-3] when deciding UHY's Motion to Dismiss.

## III. NEITHER *WAGONER* NOR *IN PARI DELICTO* BARS THE TRUSTEE'S CLAIMS.

UHY spends most of its brief arguing that the Second Circuit's decision in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) and the affirmative defense of *in pari delicto* bar Count 1 of the Complaint. In reality, *Wagoner* does not apply here, and the *in pari delicto* defense does not immunize UHY.

### A. *Wagoner* Does Not Apply.

UHY argues that the Trustee "lacks standing to maintain [Count 1] under the Second Circuit's *Wagoner* Rule." Def. Br. at 4. This argument is meritless.

More than thirty years ago, the Second Circuit conflated the *in pari delicto* defense and standing doctrines to produce what is often called the "*Wagoner* rule." *See Wagoner*, 944 F.2d at

[7] Additionally, Exhibits A-C are UHY's audit engagement letters with Near Holdco. As explained below, *see infra* Section III.B.1, the Complaint does not allege claims that formerly belonged to Near Holdco. Rather, the Complaint alleges claims that formerly belonged to the SPAC, which was not a signatory to Exhibits A-C, is not a successor to Near Holdco, and is not otherwise bound by Exhibits A-C. Moreover, Exhibit C postdates the misconduct at issue.

120. Lamented by scholars as "nonsensical," *Moratzka v. Morris (In re Senior Cottages of Am., LLC)*, 482 F.3d 997, 1003 (8th Cir. 2007), the *Wagoner* rule has been rejected by every other federal circuit court of appeals to consider it. *See id*. (aligning Eighth Circuit with First, Third, Fifth, and Eleventh Circuits in "declin[ing] to conflate the constitutional standing doctrine with the *in pari delicto* defense"); *see also Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 675 (6th Cir. 2016) (same); *CarrAmerica Realty Corp. v. Nvidia Corp*., 302 F. App'x 514, 517 (9th Cir. 2008) ("[T]he *Wagoner* rule has been much criticized and we decline to follow it.").

Most important here, the Third Circuit rejected the theory underlying the *Wagoner* rule in *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, instructing that "[a]n analysis of standing does not include an analysis of equitable defenses, such as *in pari delicto*." 267 F.3d 340, 346 (3d Cir. 2001). The "nonsensical" *Wagoner* rule is therefore no barrier here, and tellingly, UHY fails to cite a single decision by any court within the Third Circuit applying the *Wagoner* rule. UHY also fails to even mention, let alone distinguish, *Lafferty*.

Rather than admit that binding precedent forecloses its argument, UHY asserts that the *Wagoner* rule is a "rule of standing under New York state law." Def. Br. at 19. UHY could not be more wrong. The New York Court of Appeals has made clear that "the *Wagoner* rule is ***not part of New York law***" but rather "is a prudential limitation on standing ***under federal law***." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 946 n.3 (N.Y. 2010) (emphasis added). Under binding Third Circuit precedent, the *Wagoner* rule does not apply.

### B. *In Pari Delicto* Does Not Bar the Trustee's Claims.

In addition to its flawed standing argument, UHY asserts that the *in pari delicto* defense also bars Count 1. Def. Br. at 19-23. To invoke *in pari delicto*, however, UHY must first impute the Near Insiders' misconduct to the SPAC. *See Lafferty*, 267 F.3d at 355 (explaining that "the rules of imputation determine whether or not the Debtors will be deemed to have participated in

wrongdoing”). It cannot do so for at least two reasons. First, regardless of what state law applies, the doctrine of corporate separateness prevents UHY from imputing the misconduct of Near Holdco officers to the SPAC. Second, the adverse interest exception to *in pari delicto* prevents imputation. Thus, UHY’s *in pari delicto* defense fails.

**1. Corporate separateness blocks imputation to the SPAC.**

UHY’s *in pari delicto* defense rests on a false premise. UHY incorrectly asserts that the SPAC is either the same company as Near Holdco or became its successor through the Acquisition and that the Court can therefore impute the wrongdoing of Near Holdco’s agents to the SPAC. Paragraph 20 of the Complaint contradicts and thus unravels UHY’s argument. *See* Compl. ¶ 20. At bottom, UHY’s *in pari delicto* defense fails because Near Holdco and the SPAC were—and remain—completely different companies, and there is no basis to impute the wrongful conduct of Near Holdco agents to the SPAC.

Given UHY’s confusion, it helps to return to first principles. There were four Debtors in these chapter 11 cases: (1) the SPAC (n/k/a Near Intelligence, Inc.); (2) Near Intelligence, LLC; (3) Near North America, Inc.; and (4) Near Intelligence Pte. Ltd. Compl. at 1 n.1. As the Court is aware, the chapter 11 cases were never consolidated. *Id.* ¶ 5. For Count 1, the Trustee stands in the shoes of the SPAC and only the SPAC. *Id.* That the Trustee also happens to own and control causes of action that belonged to the SPAC’s co-debtors is irrelevant. *See, e.g.*, *Wells Fargo Bank, N.A. v. First Republic Bank (In re Salander)*, 503 B.R. 559, 570 n.14 (S.D.N.Y. 2013) (rejecting *in pari delicto* defense because the trustee “for present purposes . . . stood only in the shoes of Ms. Salander who is not accused of engaging in any wrongdoing” and not her co-debtor Mr. Salander).

The crux of Count 1 is that the SPAC relied on UHY’s material misrepresentations to consummate the Acquisition. *See* Compl. ¶¶ 4, 53-62. The crux of UHY’s *in pari delicto* defense is that officers of Old Near and Near Holdco (the Near Insiders) engaged in bad acts before the

Acquisition and their misconduct should be imputed to the SPAC. But UHY never explains why it can impute the bad acts of Old Near's and Near Holdco's officers to the SPAC. There is no basis to impute the actions of one company's officers to a completely different company.

Perhaps recognizing this disconnect, UHY offers two grounds for imputation. Neither passes muster. UHY's first ground is that the mergers during the Acquisition somehow triggered imputation. According to UHY, "the fraudulent acts committed at the pre-merger Near entities are imputed to [the SPAC] as the surviving corporate entity." Def. Br. at 12. This imputation theory fails because UHY gets its facts wrong: the SPAC was not the "surviving corporate entity" in any merger. Compl. ¶ 20. In fact, the SPAC was not among the merged or merging entities at all. *Id.* Only the SPAC's subsidiaries—Merger Sub 1 and Merger Sub 2—merged with and into Near Holdco. *Id.* As the Complaint details, the "surviving corporate entity" in the Acquisition's dual mergers was Merger Sub 2, which later changed its name to Near Intelligence, LLC. *Id.* The Trustee is not bringing any cause of action as successor to Near Intelligence, LLC, and thus any bad acts that may or may not be imputed to Near Intelligence, LLC are irrelevant.

Under the laws of California, Delaware, New York, and beyond, the doctrine of corporate separateness dictates that Near Intelligence, LLC, including its assets, liabilities, and imputed conduct, is distinct and separate from its parent, the SPAC. *See McHale v. Silicon Valley L. Grp.*, 2011 WL 6990187, at *5 (N.D. Cal. Dec. 14, 2011) ("A corporation is a distinct legal entity, separate from either its shareholders or its corporate officers." (citation omitted)); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 403 (S.D.N.Y. 2009) ("Under New York law, a corporate parent is not automatically liable for the acts of its wholly owned subsidiary . . . ."); *Nieves v. Insight Bldg. Co.*, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) ("A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation."); *cf.*

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." (citations omitted)). Moreover, courts regularly reject attempts to impute an officer's knowledge gained at one company to a separate company where the officer also served. *See, e.g.*, *Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*, 658 B.R. 783, 799 (D. Del. 2024) ("The fact that two or more corporations have officers or agents in common will not of itself impute the knowledge gained by such officers [or agents] while acting for one corporation to another corporation in which they also hold office." (citation omitted)); *Sandoval v. Uphold HQ Inc.*, 2025 WL 1268291, at *8 (S.D.N.Y. May 1, 2025) (refusing to impute director's knowledge gained at one company to different company where director also served).

UHY offers no basis to pierce the corporate veil to impute prior misconduct by Near Holdco officers to the SPAC. Instead, UHY relies on a First Circuit decision applying Massachusetts law—*Nisselson v. Lernout*, 469 F.3d 143 (1st Cir. 2006). Def. Br. at 23. Rather than supporting UHY's position, *Nisselson* undermines it.

*Nisselson* was largely the reverse of the present case. There, the defendants argued that fraudulent conduct at the parent entity ("L&H") was imputed to its subsidiary ("New Dictaphone") and therefore barred a litigation trustee from bringing claims on the subsidiary's behalf. *Nisselson*, 469 F.3d at 147. The trustee countered that the entity that merged into New Dictaphone ("Old Dictaphone") was innocent and thus no wrongdoing could be imputed. *Id.* at 152. Instructing that "genealogy is important," the First Circuit sided with the defendants. *Id.* at 153. Because innocent Old Dictaphone had merged into New Dictaphone and New Dictaphone survived, Old Dictaphone had "vanished into thin air." *Id.* Only New Dictaphone remained, and the court determined that L&H's control over New Dictaphone was so complete that L&H's fraud was imputed from parent

to subsidiary. *See id.* at 155 ("Because the amended complaint shows . . . that L&H created and controlled New Dictaphone in order to perpetrate the harm-producing fraud, we have no principled choice but to impute its conduct to New Dictaphone . . . .").

Here, by contrast, the entity where the wrongful conduct occurred—Near Holdco—"vanished into thin air." *See* Compl. ¶ 20. And unlike in *Nisselson*, no one here alleges that the SPAC played any role in the misconduct at Near Holdco. *See Nisselson*, 469 F.3d at 155 ("Here, the amended complaint leaves no doubt but that L&H played the primary role in contriving the scheme to acquire Old Dictaphone under false pretenses."). Nor does the Complaint (or UHY) allege that the SPAC had any control over Near Holdco. *See id.* ("L&H's control over New Dictaphone during the course of the scheme is indisputable."). That is, this case has none of the facts the First Circuit relied on to trigger imputation and *in pari delicto*. *Nisselson* would therefore be completely inapposite if not for UHY's alternative ground for imputation.

UHY's alternative ground is that because the Trustee alleges in a different lawsuit that the Near Insiders continued their misconduct upon becoming SPAC officers after the Acquisition, there is "an independent basis to impute fraud to" the SPAC. Def. Br. at 12. But the First Circuit made clear in *Nisselson* that "a party's culpability vel non must be based on its status ***at the time the alleged illegality occurred***." *Nisselson*, 469 F.3d at 155 (emphasis added). This aligns with the basic principle that *in pari delicto* only applies when the wrongdoing the plaintiff allegedly participated in matches the injury at issue. *See, e.g.*, *Pilot Corp. v. Abel*, 2023 WL 8643195, at *1, *4 (Del. Ch. Dec. 13, 2023) (striking *in pari delicto* defense when based on alleged misconduct by plaintiff's agent that "did not substantially cause [plaintiff's] injuries relating" to the plaintiff's contract claims).

In *Nisselson*, the relevant time period for its imputation analysis was before the merger, as "the fraud that underpins the trustee's claims was complete at the moment the companies merged." *Nisselson*, 469 F.3d at 156. The same is true here. UHY's actionable misrepresentations occurred prior to—and induced—the Acquisition. *See* Compl. ¶¶ 54-55. The Trustee is not suing UHY for any misconduct thereafter. As in *Nisselson*, management changes at the SPAC after the Acquisition "are beside the point." *Nisselson*, 469 F.3d at 156.

In sum, the doctrine of corporate separateness and the rationale of *Nisselson* prevent UHY from imputing misconduct at Near Holdco to an entity that did not merge with Near Holdco and never had control over Near Holdco.

**2. The adverse interest exception blocks imputation to the SPAC.**

Even if UHY could overcome the corporate separateness of the SPAC and Near Holdco (it cannot), UHY's *in pari delicto* defense still fails. California law governs the Trustee's negligent misrepresentation claim, and California's adverse interest exception bars imputation to the SPAC.

a. California law governs UHY's *in pari delicto* defense.

California law governs the Trustee's negligent misrepresentation claim and UHY's *in pari delicto* defense because: (1) the SPAC's sole place of business was in California; (2) the SPAC received and relied on UHY's audits in California; and (3) the SPAC suffered resulting damages in California. California is therefore the state with the most significant relationship here.

Delaware choice-of-law rules apply here. *See Mull Drilling Co. v. SemCrude, LP (In re SemCrude, LP)*, 407 B.R. 82, 104 (Bankr. D. Del. 2009) ("[I]t is well settled in this Circuit that a bankruptcy court faced with the issue of which substantive state law to apply to a claim for relief in an adversary proceeding applies the choice of law rules of the forum state." (collecting cases)). Under those rules, a court "looks to the Restatement (Second) of Conflict of Laws" to determine which state "has the most significant relationship to the occurrence and the parties." *Carickhoff v.*

*Goodwin (In re Decade, S.A.C., LLC)*, 635 B.R. 735, 760 (Bankr. D. Del. 2021) (citing RESTATEMENT (SECOND) OF CONFLICT OF L. § 148 (Am. Law Inst. 1971)). A "choice of law analysis is issue-specific" and conducted on a claim-by-claim basis. *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). As UHY implicitly concedes, the law governing the Trustee's negligent misrepresentation cause of action also governs UHY's *in pari delicto* defense.

UHY insists that New York law governs Count 1, but UHY reaches that flawed conclusion by mistakenly analyzing this dispute as a malpractice claim, not as one for negligent misrepresentation. That distinction matters because, in determining what state has the most significant relationship to a negligent misrepresentation claim, the Restatement emphasizes different factors than it does in the malpractice context.[8]

As the Restatement explains, section 148 applies to "to actions brought to recover pecuniary damages suffered on account of false representations, whether fraudulent, negligent or innocent." RESTATEMENT (SECOND) OF CONFLICT OF L. § 148 cmt. a. The Restatement also confirms that section 148 provides "greater precision" than its other sections, including section 145, in cases of fraud or misrepresentation. *Id.* § 145 cmt. a. Thus, although section 145 applies to torts in general, Delaware courts agree that section 148 "recasts" section 145 "with respect to fraud or misrepresentation claims." *Teamsters Loc. 237 Welfare Fund v. Astrazeneca Pharms. LP*, 2015 WL 4111826, at *5, (Del. Super. Ct. July 8, 2015) (quoting *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 468 (D. Del. 2010)). Accordingly, Delaware courts rely on section 148's factors when analyzing fraud and negligent misrepresentation claims. *See Fluor*

[8] UHY also cites to several decisions applying New York choice-of-law rules. Unlike Delaware, New York does not apply the Restatement to resolve conflicts involving torts and instead has constructed its own analysis with different rules depending on whether the law at issue "regulate[s] primary conduct . . . [or] allocate[s] losses after the tort occurs." *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993). Consequently, decisions applying New York choice-of-law rules are inapt here.

*Enters. v. Orion Refin. Corp. (In re Orion Refin. Corp.)*, 341 B.R. 476, 484 (Bankr. D. Del. 2006) ("Section 148 of the Restatement governs the choice of law for torts alleging fraud and misrepresentation.").[9]

Under section 148(2),[10] courts consider the following contacts to determine which state has the "most significant relationship" to a negligent misrepresentation dispute:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) OF CONFLICT OF L. § 148(2).

As applied here, section 148 confirms that California law governs Count 1. First, it is undisputed that California is where the SPAC acted in reliance on UHY's misrepresentations. Compl. ¶¶ 4, 6, 25-26, 53-56, 60-62, 69, 73. Second, it is also undisputed that the SPAC received UHY's false representations in California. Compl. ¶¶ 6, 28, 31, 33-34, 56, 69, 73. Third, it is undisputed that the SPAC's principal place of business was Berkeley, California. *Id.* ¶ 6. Importantly, section 148 gives more weight to the location of the SPAC's headquarters than UHY's. As Judge Sontchi explained: "[T]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant" because "the loss is of 'greatest concern to the state with which the person suffering the loss has the closest

[9] *See, e.g.*, *Teamsters*, 2015 WL 4111826, at *7-8 (relying on "§ 148 in conducting its 'most significant relationship' analysis" for fraud claims), *aff'd*, 136 A.3d 688 (Del. 2016); *In re Decade,* 635 B.R. at 760 (relying on section 148 factors for misrepresentation-based counterclaims); *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 734 (D. Del. 2014) (relying on section 148 factors for fraud and negligent misrepresentation claims); *Zeneca*, 710 F. Supp. 2d at 470 (relying on section 148 factors for misrepresentation-based consumer protection claims).

[10] Section 148(1) is not applicable here.

relationship.'" *In re Decade*, 635 B.R. at 760 (quoting *Feinberg v. Saunders, Karp & Megrue, LP*, 1998 WL 863284, at *11 (D. Del. Nov. 13, 1998) (quoting comments to section 148(2))).[11] Indeed, the Restatement comments make clear that the SPAC's principal place of business is a contact "of substantial significance when [as here] the loss is pecuniary in its nature." RESTATEMENT (SECOND) OF CONFLICT OF L. § 148(2), cmt. i.

Fourth, to the extent applicable, the fifth factor also weighs in favor of California, as Near Holdco was based in Pasadena, California. Compl. ¶¶ 19, 25-26, 53-56; *cf.* RESTATEMENT (SECOND) OF CONFLICT OF L. § 148(2), cmt. i ("When the subject of the transaction between the parties is a tangible thing, the place where the thing is situated at the time of the transaction is a contact of some importance provided, at least, that both parties were aware that the thing was situated in this place at that time."); *Stanley Black & Decker*, 70 F. Supp. 3d at 734 (taking into consideration acquired company and assets as possibly being "a tangible thing which is the subject of the transaction"). Finally, California is undoubtedly where the SPAC "render[ed] performance" in the Acquisition, which consisted of its acquiring another California-based entity (Near Holdco). *See, e.g.*, *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 503, 505 (D.N.J. 2014) (applying section 148's place of performance factor to fraud and negligent misrepresentation claims against defendants whose alleged misrepresentations induced plaintiff to enter into equipment lease agreement with separate party); *cf. Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 467 (3d Cir. 2006) (explaining that "place of performance" contact for asset purchase agreement was "essentially a combination of the location of the [seller's] assets and the places of business of the seller and buyer" in choice-of-law analysis under different Restatement section).

[11] *See also* RESTATEMENT (SECOND) OF CONFLICT OF L. § 148(2) cmt. i ("In the case of corporations, the principal place of business is a more important contact than the place of incorporation.").

Thus, of the section 148 factors, ***all but one support California as having the most significant relationship to this dispute***. The Restatement also gives more weight to the factors favoring California, causing its interests to outweigh any other states' on both a quantitative and qualitative basis.[12] Tellingly, UHY's Motion to Dismiss does not analyze section 148's factors and ignores them almost entirely. Instead, UHY pretends this is an audit malpractice case, invoking Restatement section 145 and inapposite malpractice decisions. But even UHY's framing of section 145 attempts to lead this Court astray.

For instance, UHY argues that the SPAC's "injury occurred in New York because that is where UHY's purported professional negligence occurred." Def. Br. at 16. Yet section 145 instructs that "the state where the injury occurred . . . is often the state where the plaintiff resides." RESTATEMENT (SECOND) OF CONFLICT OF L. § 145 cmt. c. And when the plaintiff is an entity, "[t]he effect of the loss . . . will normally be felt most severely at the plaintiff's headquarters." *Id.* cmt. f. Here, the SPAC was injured in California because that was its sole place business and where it received and relied on UHY's misrepresentations. Compl. ¶¶ 6, 53-62, 69, 73-74.

UHY also relies on inapposite case law that, ironically, bolsters the Trustee's argument for California law. In *Kaiser Group Holdings, Inc. v. Squire Sanders & Dempsey LLP*, for example, the alleged malpractice occurred in the same state as the client's then-domicile. *See* 2010 WL 3271198, at *5 (Bankr. D. Del. Aug. 17, 2010) ("Because the bankruptcy case, and the actions giving rise to the alleged attorney malpractice, occurred in Delaware, the Court concludes that Delaware is the place of injury."). That state was thus "the place of injury." *Id.*

[12] *See*, *e.g.*, RESTATEMENT (SECOND) OF CONFLICT OF L. § 148(2) cmt. i (highlighting that "principal place of business, if plaintiff is a corporation" is a contact "of substantial significance when the loss is pecuniary in its nature" because "financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship").

The same result occurred in *In re American International Group, Inc. Consolidated Derivative Litigation* ("*AIG*"), where the plaintiff was domiciled in the state where the defendant performed the faulty audit. *See* 965 A.2d 763, 819 (Del. Ch. 2009) (noting that defendant "performed most of its audit services in New York" and that plaintiff "maintains its 'principal executive office' in New York City"). Indeed, the choice-of-law discussion in *AIG* is devoted solely to balancing the interest of the state where the misconduct occurred and was relied upon against the parties' state of formation. *See id.* ("Plaintiffs stress that [plaintiff] is a Delaware corporation and that [defendant] is a Delaware [LLP]."). No party here urges that the substantive law of Delaware (the SPAC's state of incorporation) governs the Trustee's claims.

UHY's reliance on *Overland Leasing Group, LLC v. First Financial Corp.* is similarly misplaced. In *Overland*—like in *AIG* and *Kaiser Group*—it was undisputed that plaintiff's reliance and defendant's representations occurred in the same state. *See Overland*, 436 F. App'x 119, 123 (3d Cir. 2011) (unpublished opinion) (noting that plaintiff's due diligence and execution of contract at issue took place in New York, plaintiff's New York office oversaw both processes, and resulting contract "designated New York law as controlling"). Here, that is not the case.

*Kaiser Group*, *AIG*, and *Overland* are thus distinguishable because the SPAC had no presence in the state where UHY allegedly performed its audit. Moreover, UHY cannot overcome the Complaint's allegations that California is where the SPAC received, relied on, and was harmed by UHY's audit work and that UHY knew that the SPAC would receive and rely on that work in California. Compl. ¶¶ 6, 56. Because *Kaiser Group*, *AIG*, and *Overland* did not involve (a) misconduct in a state different from the plaintiff's domicile or (b) representations made, received, and relied on in different states, all three decisions are inapposite. If anything, they teach that the deciding factor is where the plaintiff relied on the faulty work. Here, that was no doubt California.

Undeterred, UHY argues that "[e]valuation of the second and fourth factors [of Restatement section 145] demonstrates that ***only*** New York has a connection to this matter because that is where ***all*** of UHY's work in connection with [Near Holdco's] audits was done." Def. Br. at 17. The notion that only New York has a connection to this matter is blatantly false, ignores the impact of UHY's misconduct, and overlooks that the Restatement recasts section 145's factors in section 148 to better fit misrepresentation claims.[13]

Instead, courts look to Restatement section 6 to assess conclusions reached under section 148. *See Stanley Black & Decker*, 70 F. Supp. 3d at 733 (testing "tentative conclusion reached" under section 148 "against the principles of [Restatement section] 6 to determine whether that forum actually has the most significant relationship to the underlying tort"); *Zeneca*, 710 F. Supp. 2d at 470 ("[O]nce the § 148 factors have been applied and the analysis points to a particular jurisdiction, courts must consider if 'the section 6 considerations gin up or diminish the values ascribed to the contacts relative to the issue presented.'" (citation omitted)). None of the principles set out in section 6 countervails the conclusion that California law should apply. The California Supreme Court has repeatedly emphasized California's paramount interest in protecting its citizens from deceptive business practices. *See, e.g.*, *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 275 (Cal. 2004) ("California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." (quoting *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 968 P.2d 539, 557 (Cal. 1999))). And other courts have likewise acknowledged that "California's consumer protection laws are among the strongest in the country." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008).

---

[13] *See* RESTATEMENT (SECOND) OF CONFLICT OF L. § 148(2), cmt. g (noting that neither where misrepresentation was made or received is as "important a contact as . . . the place where the plaintiff acted in reliance on the defendant's representations").

UHY counters that it "reasonably expected New York law to apply" based on its engagement letters with Near Holdco, but as before, ***UHY focuses on the wrong entities***. The SPAC was not a party to those engagement letters, and UHY knew that the SPAC was based in California, was receiving UHY's audit work in California, and was relying on that audit work in California to acquire another California-based company. Compl. ¶¶ 4, 6, 25-26, 28, 53-56, 60-62, 69, 73. As in *Zeneca*, "[i]t would not upset [UHY's] expectations by being sued under [California] law as [UHY was] acutely aware" that its audit work was being sent to and relied on in California. *Zeneca*, 710 F. Supp. 2d at 473. Nor would it upset the SPAC's expectations "to apply the law of [its] home state as [its] only justified expectation would be for an opportunity for redress under the laws of [its] own jurisdiction." *Id.*

In short, given this dispute's numerous and meaningful California connections, New York's interest in protecting professional firms gives way to California's paramount interest in protecting its citizens when a New York firm directs misrepresentations to California, knowing that a California citizen will rely on them in California, and the citizen suffers resulting harm in California. California therefore has the most significant relationship to this dispute, and California law governs both Count 1 and UHY's *in pari delicto* defense.

b. California's adverse interest exception blocks imputation.

Under California law, "[a] corporate officer's knowledge will not be imputed to a corporation . . . when he has 'no authority to bind the corporation relative to the fact or matter within his knowledge.'" *McHale v. Silicon Valley L. Grp.*, 2011 WL 6990187, at *5 (N.D. Cal. Dec. 14, 2011). "Nor will a corporate officer's knowledge or conduct be imputed to a corporation if the officer is engaged in activity that is adverse to the interest of the corporation." *Id.* (citing *FDIC v. O'Melveny & Myers*, 969 F.2d 744, 750 (9th Cir. 1992)). Unlike New York, California only requires that the corporate officer's interests be "adverse"; there is no "requirement of

'complete' abandonment of the corporation's interests." *MicroTechnologies, LLC v. Autonomy, Inc.*, 2018 WL 4538782, at *5 (N.D. Cal. Sept. 21, 2018).

Here, there is no doubt that the Near Insiders (1) had "no authority to bind" the SPAC when they engaged in their misconduct leading up to the Acquisition; and (2) were "engaged in activity that was adverse to the interests" of Old Near, Near Holdco, and the SPAC leading up to the Acquisition. *McHale*, 2011 WL 6990187, at *5. While officers at Old Near, the Near Insiders looted Old Near and engaged in self-dealing. Compl. ¶¶ 16-18, 43-44, 52-53. Their looting and self-dealing continued when they became officers at Near Holdco. *Id.* ¶¶ 50-51, 53. UHY argues that the Near Insiders' looting and self-dealing after the Acquisition should be also considered. *See* Def. Br. at 12. But even if that conduct were relevant, it would not matter. The adverse interest exception clearly applies to looting and self-dealing, and it prevents the Near Insiders' misconduct from imputing to Old Near, Near Holdco, and the SPAC. *See*, *e.g.*, *Golden State TD Invs., LLC v. Andrews Kurth LLP (In re Cal. TD Invs. LLC)*, 489 B.R. 124, 131 (Bankr. C.D. Cal. 2013) (rejecting *in pari delicto* defense because agent's "wrongful behavior depleted [principal's] assets for [agent's own] benefit" and thus triggered "adverse interest exception to imputation").

Accordingly, the adverse interest exception bars imputation of the Near Insiders' misconduct to the SPAC, and UHY's *in pari delicto* defense fails.

## IV. THE COMPLAINT ALLEGES A PLAUSIBLE CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW.

Count 2 of the Complaint alleges that UHY engaged in unlawful and/or unfair business practices under the UCL. Compl. ¶ 76. The UCL's "scope is sweeping" and "intentionally framed" to be incredibly broad "to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 561 (Cal. 1999) (citation modified). "The 'unlawful' practices prohibited by [the UCL] are any

practices forbidden by law, be it civil or criminal . . . statutory, regulatory, or court-made." *Saunders v. Superior Ct.*, 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994). "'Unfair' [under the UCL] simply means any practice whose harm to the victim outweighs its benefits." *Id.*

UHY seeks dismissal of Count 2 because the Complaint's allegations, according to UHY, are "mere recitations of the various pleading standards" and because the Trustee "has failed to establish any entitlement to [equitable] relief." Def. Br. at 4. UHY is wrong on both grounds.

**A. The Complaint Sufficiently Alleges UHY's Unlawful and Unfair Conduct.**

"The UCL provides a cause of action against defendants that engage in business practices that are (1) unlawful, (2) unfair, or (3) fraudulent," where "each of the three prongs of the UCL constitutes a separate and distinct theory of liability." *Freedom Gold USA LLC v. Bank of Am., N.A.*, 2024 WL 5368652, at *9 (C.D. Cal. Nov. 15, 2024) (citing CAL. BUS. & PROF. CODE § 17200). Count 2 alleges that UHY violated the UCL in how it recklessly performed "the audits of Near Holdco" and recklessly "issued unqualified audit opinions for financial statements containing material misrepresentations, while knowing that [those] unqualified audit opinions would be relied on by [the SPAC and its shareholders] in deciding to consummate the Acquisition and to include those financial statements in [its] public securities filings." Compl. ¶¶ 75-76. UHY further knew that the public, in turn, would rely on its unqualified audit opinions in deciding whether to invest in the SPAC following the Acquisition, which would affect its stock price. *Id.* ¶¶ 76, 78. Given the UCL's "sweeping" scope, UHY's material misrepresentations constituted unlawful or unfair business practices, and Count 2 states a plausible claim for relief. *See State ex rel. Harris v. PricewaterhouseCoopers*, 23 Cal. Rptr. 3d 529, 579-81 (Cal. Ct. App. 2005), *rev'd in part on other grounds*, 141 P.3d 256 (Cal. 2006) (reversing demurer of UCL claim based on auditor's violations of GAAS).

UHY argues that "violations of GAAS" are "merely professional standards for the accounting industry" that cannot support a cause of action under the UCL. Def. Br. at 25. UHY cites no authority for this proposition and for good reason. California courts have repeatedly concluded that violations of professional standards are actionable under the unlawful prong of the UCL. *See, e.g.*, *State ex rel. Herrera v. Stender*, 152 Cal. Rptr. 3d 16, 32 (Cal. Ct. App. 2012), *as modified* (Jan. 16, 2013) (holding that violations of California Rules of Professional Conduct adequately supported UCL claim).

Indeed, in *State ex rel. Harris v. PricewaterhouseCoopers*, a California appellate court expressly held that GAAS violations were actionable under the UCL. 23 Cal. Rptr. 3d at 579-81. As explained by the *Harris* court, under California Business and Professions Code section 5062, accountants "shall issue a report which conforms to professional standards upon completion of a compilation, review or audit of financial statements." *Id.* at 579-80. And "[t]he California Board of Accountancy has issued regulations requiring accountants to "comply with all applicable professional standards, *including but not limited to* generally accepted accounting principles and *generally accepted auditing standards*." *Id.* at 580 (citing CAL. CODE REGS., tit. 16, § 58). The court thus concluded that a complaint that "alleged numerous violations of GAAS in preparing and submitting 'clean' audit reports" had sufficiently stated a cause of action under the UCL. *Id.*

Additionally, the Complaint separately satisfies the unfair prong's balancing test, which requires that courts "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1051 (S.D. Cal. 2018). At the pleading stage, the balancing test is "not . . . a particularly difficult test to satisfy." *Id.* Here, the Complaint more than

adequately alleges how UHY's conduct negatively impacted the SPAC and the gravity of the harm suffered. *See, e.g.*, Compl. ¶¶ 3, 57- 62, 69-73, 76, 78.

In sum, Count 2 alleges a plausible UCL claim under that law's unlawful and unfair prongs.

**B. The Complaint Sufficiently Alleges Entitlement to Equitable Relief.**

UHY also argues that the Trustee has failed to (a) show that it lacks an adequate remedy at law or (b) enumerate the equitable relief sought. Def. Br. at 27. No such requirements exist at the pleading stage. *See Snowman v. FCA US LLC*, 2025 WL 3251311, at *3 n.6 (D. Del. Nov. 21, 2025) (declining to dismiss UCL claim when complaint "alleges non-monetary harm and seeks equitable relief, and I can't say that is implausible at this early stage of the case"); *French v. Banana Republic LLC*, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024) (declining to dismiss UCL claim when complaint sought restitution and noting that it wastes time to argue at pleading stage "about whether an adequate remedy at law might exist at the end of the day"). Here, the Complaint makes clear that it seeks equitable relief in the form of "orders or judgments for restitution, injunctive relief, and any other relief the Court deems appropriate," relief that is available only because the Trustee lacks an adequate remedy at law. Compl. ¶ 79.

Additionally, UHY asserts that the Trustee fails to allege "that UHY received any benefit as a result of the purported bad acts." Def. Br. at 28. UHY is dead wrong. The restitution sought in the Complaint includes the return of monies that the SPAC paid to UHY "for work related to Near Holdco's financial statements," with such work being "largely valueless" as it was "riddled with errors and materially misstated Near Holdco's financial condition to [the SPAC] and to the public at-large." Compl. ¶ 78. As explained by the California Supreme Court, "restitution" means "orders compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken," which here would be the return of monies paid to UHY. *Kraus v. Trinity Mgmt. Servs., Inc.*, 999 P.2d 718, 725 (Cal. 2000); *see*

*also Shersher v. Superior Ct.*, 65 Cal. Rptr. 3d 634, 640-41 (Cal. Ct. App. 2007) (explaining that "a plaintiff in a UCL action may obtain restitution from a defendant with whom the plaintiff did not deal directly" and further noting that "'[t]o confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution.'" (quoting *Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 229 (Cal. Ct. App. 2003))).

Accordingly, the Complaint more than sufficiently alleges the Trustee is entitled to equitable relief.

## CONCLUSION

For these reasons, the Trustee respectfully requests that the Court deny UHY's Motion to Dismiss in its entirety. In the alternative, if the Court concludes that the Complaint is not adequately pleaded, the Trustee respectfully requests leave to replead. Rule 15(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides that "when justice so requires," leave to amend should be "freely granted." FED. R. CIV. P. 15(a)(2). As the Third Circuit has explained, courts should use "strong liberality" in considering whether to grant leave to amend. *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). Leave to amend should not be denied absent undue delay, bad faith, undue prejudice to the non-movant, or futility, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), none of which is present here.

Dated: February 18, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*
Bradford J. Sandler (DE Bar No. 4142)
Beth E. Levine (*pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
T: (302) 652-4100
F: (302) 652-4400
bsandler@pszjlaw.com
blevine@pszjlaw.com
pkeane@pszjlaw.com

-and-

**REID COLLINS & TSAI LLP**

Eric D. Madden (*pro hac vice*)
Brandon V. Lewis (*pro hac vice*)
Brian J. Bah (*pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
T: (214) 420-8900
F: (214) 420-8909
emadden@reidcollins.com
blewis@reidcollins.com
bbah@reidcollins.com

*Counsel for Drivetrain, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., et al. Litigation Trust*