**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,<br><br>Debtors. | ) | Chapter 11<br><br>Case No. 23-11962 (TMH)<br><br>(Jointly Administered) |
| DRIVETRAIN, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., *et al*. Litigation Trust,<br><br>Plaintiff,<br><br>v.<br><br>UHY LLP,<br><br>Defendant. | ) | Adv. Proc. No. 25-52378 (TMH) |

**DEFENDANT UHY LLP'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNTS 1 AND 2 OF PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


**Page**

**TABLE OF AUTHORITIES** ..... **ii**

**I. PRELIMINARY STATEMENT** ..... **1**

**II. ARGUMENT** ..... **2**

**A. *In Pari Delicto* Bars Plaintiff's Negligent Misrepresentation Claim (Count 1)** ..... **2**

**i. New York Law Applies** ..... **2**

**a. The Engagement Letters Are Integral to the Complaint and Their Terms Govern UHY's Services** ..... **2**

**b. Additional Factors Require Application of New York Law** ..... **5**

**ii. The *In Pari Delicto* Doctrine Bars Plaintiff's Claim** ..... **8**

**a. Plaintiff Cannot Escape Imputation of Bad Acts Committed by Its Own Officers** ..... **8**

**b. The Adverse Interest Exception Does Not Apply** ..... **11**

**B. Plaintiff's Claim for Fraudulent Business Practices Fails (Count 2)** ..... **12**

**i. Plaintiff's Conclusory Allegations Fail to State a Claim** ..... **12**

**ii. Plaintiff Fails to Establish Entitlement to Equitable Relief** ..... **13**

**C. Other Documents Annexed to the Motion Are Subject to Judicial Notice** ..... **15**

**III. CONCLUSION** ..... **15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2004 Parker Fam. LP v. BDO USA LLP*,
67 Misc. 3d 1222(A), (N.Y. Sup. Ct. 2020) ....................4

*Benn v. Allstate Ins. Co.*,
569 F. Supp. 3d 1029 (C.D. Cal. 2021) ....................14

*Bily v. Arthur Young & Co.*,
834 P.2d 745 (Cal. 1992) ....................4

*Brown v. Grimes*,
192 Cal. App. 4th 265 (Cal. Ct. App. 2011) ....................14

*Cobalt Multifamily Investors I, LLC v. Arden*,
857 F. Supp. 2d 349 (S.D.N.Y. 2011)....................12

*Cohen v. Acorn Int'l Ltd.*,
944 F. Supp. 204 (S.D.N.Y. 1996)....................3

*Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*,
658 B.R. 783 (D. Del. 2024)....................11

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
483 N.E.2d 110 (N.Y.), *amended*, 489 N.E.2d 249 (1985) ....................3, 4

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ....................13

*French v. Banana Republic LLC*,
2024 WL 4682312 (N.D. Cal. Nov. 4, 2024) ....................14

*Glenn K. Jackson Inc. v. Roe*,
273 F.3d 1192 (9th Cir. 2001) ....................13

*State of California ex rel. Harris v. PricewaterhouseCoopers*,
23 Cal. Rptr. 3d 529 (Ct. App.), *rev'd in part on other grounds*, 111 P.3d 921
(Cal. 2005) ....................12

*People ex rel. Herrera v. Stender*,
152 Cal. Rptr. 3d 16 (Cal. Ct. App. 2012)....................12

*HSA Residential Mortg. Servs. of Texas v. Casuccio*,
350 F. Supp. 2d 352 (E.D.N.Y. 2003) ....................7

*In re 225 Bowery LLC*,
2025 WL 2445879 (Bankr. D. Del. Aug. 25, 2025) ....................15

*In re Am. Int'l Grp., Inc. (AIG)*,
965 A.2d 763 (Del. Ch. 2009)....................6, 7

*In re Bittrex, Inc.*,
2024 WL 2347311 (Bankr. D. Del. May 22, 2024)....................15

*In re California TD Invs. LLC*,
489 B.R. 124 (Bankr. C.D. Cal. 2013)....................11

*In re Decade, S.A.C., LLC*,
635 B.R. 735 (Bankr. D. Del. 2021) ....................6

*In re Dep't 13, Inc.*,
2024 WL 958080 (Bankr. D. Del. 2024) ....................8

*In re F-Squared Inv. Mgmt., LLC*,
2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ....................14

*In re Orion Ref. Corp.*,
341 B.R. 476 (Bankr. D. Del. 2006) ....................6

*In re Salander*,
503 B.R. 559 (S.D.N.Y. 2013)....................10, 11

*In re Uni-Marts, LLC*,
404 B.R. 767 (Bankr. D. Del. 2009) ....................6

*JSM Tuscany, LLC v. Superior Ct.*,
193 Cal. App. 4th 1222 (Cal. Ct. App. 2011) ....................4

*Kaiser v. StubHub, Inc.*,
2024 WL 3445059 (S.D.N.Y. July 17, 2024) ....................5, 7

*Kirschner v. KPMG LLP*,
938 N.E.2d 941 (N.Y. 2010)....................8, 10, 11

*Kraus v. Trinity Mgmt. Servs., Inc.*,
23 Cal. 4th 116 (2000) ....................14

*Lloyd's London v. Nat'l Installment Ins. Servs., Inc.*,
2007 WL 4554453 (Del. Ch. Dec. 21, 2007)....................6

*McHale v. Silicon Valley L. Grp.*,
2011 WL 6990187 (N.D. Cal. Dec. 14, 2011)....................11

*Microtechnologies, LLC v. Autonomy, Inc.*,
2018 WL 4538782 (N.D. Cal. Sept. 21, 2018) ....................11

*New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*,
145 A.D.3d 16 (N.Y. App. Div. 2016) ....................11

*Nisselson v. Lernout*,
469 F.3d 143 (1st Cir. 2008)....................9, 10

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)....................8, 9

*Overland Leasing Grp., LLC v. First Fin. Corp. Servs. Inc.*,
436 F. App'x 119 (3d Cir. 2011) ....................7

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018)....................13

*Pilot Corp. v. Abel*,
2023 WL 8643195 (Del. Ch. Dec. 13, 2023)....................10

*Rector v. Calamus Grp., Inc.*,
17 A.D.3d 960 (N.Y. App. Div. 2005) ....................4

*Sandoval v. Uphold HQ Inc.*,
2025 WL 1268291 (S.D.N.Y. May 1, 2025) ....................11

*Shersher v. Superior Ct.*,
154 Cal. App. 4th 1491 (Cal. Ct. App. 2007)....................14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................14

*Stanley Black & Decker, Inc. v. Gulian*,
70 F.Supp.3d 719 (D. Del. 2014)....................6

*Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharms. LP*,
2015 WL 4111826 (Del. Super. Ct. July 8, 2015) ....................6

*Trierweiler v. Croxton & Trench Holding Corp.*,
90 F.3d 1523 (10th Cir. 1996) ....................7

*Turner v. Porsche Cars N. Am., Inc.*,
2023 WL 8788754 (C.D. Cal. Dec. 19, 2023) ....................13

*Van Lake v. Sorin CRM USA, Inc.*,
2013 WL 1087583 (Del. Super. Ct. Feb. 15, 2013)....................5

*Walton v. Comfort Sys. USA (Syracuse), Inc.*,
155 F.4th 144 (2d Cir. 2025) ....................................................................................4

Defendant UHY submits this reply in further support of its Motion to Dismiss.

## I. PRELIMINARY STATEMENT

Plaintiff spends the majority of its Opposition laboring to persuade the Court not to consider documents that are integral to the Complaint because they undermine Plaintiffs' claims—the Engagement Letters governing UHY's professional services at issue. Plaintiff, who was not UHY's client, takes the position that it meets the high bar of "approaching privity" with UHY (under New York law) and/or that it meets the "third-party beneficiary model" (under California law) required to bring a negligent misrepresentation claim against UHY. In an about-face, Plaintiff then all but denies the very existence of the Engagement Letters pursuant to which UHY's professional services were performed. Plaintiff cannot have it both ways.

The Engagement Letters contain a broad choice-of-law provision in favor of New York law. In addition, the majority of the factors considered by Delaware courts in a choice-of-law analysis favor application of New York law. The only connection to California is that the SPAC (in whose shoes Plaintiff now stands) and Near Holdco (the audit client) were based in California. But the SPAC's stock is publicly traded on a New York stock exchange, Plaintiff hired UHY's New York auditors for that reason, and Plaintiff alleges that it relied on UHY's audit reports by entering into the merger transaction, in which the SPAC's stock served as consideration. Plaintiff then tries to create a false distinction between choice-of-law factors pertaining to malpractice claims as opposed to negligent misrepresentation claims. The result is the same no matter how Plaintiff characterizes its claim—whether negligent misrepresentation, professional negligence, or professional malpractice. To the extent Plaintiff purports to bring an ***ordinary*** negligence claim against UHY, then UHY had no duty to satisfy any professional accounting standards. New York law applies to Plaintiff's negligent misrepresentation claim.

Plaintiff's negligent misrepresentation claims are precluded under the *in pari delicto*

doctrine. Plaintiff does not dispute that Near Holdco, UHY's client, engaged in a fraudulent revenue recognition scheme prior to its acquisition by the SPAC. Nor does Plaintiff dispute that post-acquisition, the officers of Near Holdco were appointed as officers of the SPAC and continued to engage in the same misconduct. The SPAC, whose sole purpose was to engage in a business combination, thus became tainted by the fraud. Plaintiff (the litigation trustee) stands in the shoes of the SPAC ***as of the petition date***, not some prior date before the acquisition as Plaintiff pretends. Accordingly, *in pari delicto* dictates imputation of the SPAC's officers' misconduct to the SPAC and bars its claim against UHY.

Plaintiff concedes that, under New York law, the adverse interest exception does not apply to save Plaintiff from imputation of the misconduct. The California cases relied upon by Plaintiff do not support its position, as they do not apply the exception where, as here, misconduct benefitted the corporation at the expense of outsiders (the fraudulent revenue recognition scheme) as opposed to harming the corporation (e.g., theft of corporate assets). The exception applies only to the latter.

Plaintiff's conclusory allegations fail to state a California Unfair Competition Law ("UCL") claim, as it cannot allege any fraudulent, unlawful, or unfair practices by UHY. Nearly all Plaintiff's proffered authority involves consumer class action cases, not professional negligence cases involving sophisticated parties who entered into agreements governing the services provided. Equally fatal to Plaintiff's UCL claim is its failure to allege that it has no adequate remedy at law. Plaintiff cannot amend its Complaint through a brief, nor can the defect be cured by amendment.

## II. ARGUMENT

### A. *In Pari Delicto* Bars Plaintiff's Negligent Misrepresentation Claim (Count 1)

#### i. New York Law Applies

##### a. The Engagement Letters Are Integral to the Complaint and Their Terms Govern UHY's Services

Plaintiff wrongly asserts that the Engagement Letters—pursuant to which UHY provided

the very services about which Plaintiff now complains—cannot be considered by the Court because they are not integral to the Complaint. The Engagement Letters govern the scope of UHY's services and the nature of its relationship to certain debtors—this goes to the heart of Plaintiff's allegations. Specifically, Plaintiff devotes an entire section of its Complaint to allegations regarding "UHY's Relationship with the SPAC" (Compl. ¶¶ 28-34) with the transparent objective of trying to meet the high bar required for non-clients to sue auditors.[1] Courts take judicial notice of engagement letters in similar situations. *See, e.g.*, *Cohen v. Acorn Int'l Ltd.*, 944 F. Supp. 204, 206–07 (S.D.N.Y. 1996) (taking judicial notice—as integral to plaintiff's claims—of engagement letter for financial advisory services, where plaintiff, a third party who invested in client, brought negligent misrepresentation claim against advisor). Plaintiff's cases (Opp. at 10-12) do not dictate a different result, as they do not involve disputes over professional services provided pursuant to engagement letters.

The parties dispute whether New York law or California law applies to Plaintiff's negligent misrepresentation claim. Both New York and California require a non-client plaintiff to satisfy a high bar to bringing negligence-based claims against accountants. Under New York law, before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on alleged inaccurate financial reports, the plaintiff must allege "the existence of a relationship between the parties sufficiently approaching privity." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 119 (N.Y.), *amended*, 489 N.E.2d 249 (1985) (providing a strict three-part test). While not as burdensome as New York, "California courts have consistently required some manifestation on the part of a professional who offers an opinion, information, or advice that he or she is acting to benefit a third party or defined group of third parties in a specific and

[1] Plaintiff also alleges that it paid UHY for its services. Compl. ¶ 63.

circumscribed transaction," also referred to as the "third party beneficiary model." *Bily v. Arthur Young & Co.*, 834 P.2d 745, 771 (Cal. 1992).

Here, Plaintiff alleges that UHY knew the audit reports were going to be transmitted to the SPAC, that the SPAC was going to rely on the audit reports, and that UHY and the SPAC communicated directly about the audit reports. (Compl. ¶¶ 28-34.) UHY does not concede that Plaintiff can satisfy its burden of proof under *Credit Alliance* or *Bily*. In any event, assuming Plaintiff (as a non-client) has met its pleading burden under this high standard, it is flatly improper to disregard the Engagement Letters governing the professional services UHY performed. To cement this inevitable conclusion, Plaintiff itself concedes that the audit reports are integral to the Complaint. (Opp. at 10-11.) *See Walton v. Comfort Sys. USA (Syracuse), Inc.*, 155 F.4th 144, 161 (2d Cir. 2025) ("third-party beneficiaries are generally bound by the terms of the contracts pursuant to which they sue"); *Rector v. Calamus Grp., Inc.*, 17 A.D.3d 960, 962 (N.Y. App. Div. 2005) (same); *2004 Parker Fam. LP v. BDO USA LLP*, 67 Misc. 3d 1222(A), at *3 (N.Y. Sup. Ct. 2020) (same in auditor context); *JSM Tuscany, LLC v. Superior Ct.*, 193 Cal. App. 4th 1222, 1240 (Cal. Ct. App. 2011) ("a nonsignatory can be compelled to arbitrate when it is suing as a third-party beneficiary of the contract containing the arbitration clause"). *Cf. Bily*, 834 P.2d at 772 (intended beneficiaries of audit report are not entitled to recover on a "general negligence theory").

Importantly, post-merger, the SPAC's audit committee's chair signed a new engagement letter with UHY in 2023, proving that it was both on notice of, and agreed to be bound by, UHY's standard terms and conditions—including the New York choice-of-law provision. (Norris Decl. Ex. C.) This is another reason why the Plaintiff toils to strike them from review.

The Engagement Letters' choice-of-law provision covers both contract and tort claims:

> This engagement letter and ***all services rendered hereunder*** shall be governed, construed, and enforced by the laws of the State of New York, without the need to resort to principles

> of conflicts of laws. New York law shall apply to any legal or equitable proceeding that shall be instituted ***in any way arising out of this engagement letter, any obligations*** contained or allegedly contained herein, and ***all services rendered touching or relating in any way*** to the obligations of this engagement letter.

Norris Decl. Exs. A-C (emphasis added).[2]

**b. Additional Factors Require Application of New York Law**

The above choice-of-law provision establishes the parties' understanding and reasonable expectation that the services provided by UHY would be governed by New York law. Other factors considered by Delaware courts also compel application of New York law. (*See* Mot. at 13-19.)

While the parties agree that Delaware's choice-of-law rules apply, and that Delaware follows the Restatement (Second) of Conflicts of Laws (the "Restatement"), the Court should reject Plaintiff's attempt to use it as a strawman. Plaintiff does not create a credible distinction between claims against accountants styled as "malpractice" and those styled as "negligent misrepresentation." Whether Plaintiff labels its claim as negligent misrepresentation, professional malpractice, or professional negligence (or even breach of contract), its theory of recovery is the same. Plaintiff cannot maintain a claim against UHY for ***ordinary*** negligence because, in that case, UHY would not owe anyone any duty to satisfy any ***professional*** standards.[3] UHY provided

[2] *See Kaiser v. StubHub, Inc.*, 2024 WL 3445059, at *4–5 (S.D.N.Y. July 17, 2024) ("A clause that refers to claims 'arising out of or relating to' an agreement is the paradigm of a broad clause" and encompasses tort claims) (cleaned up); *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *6 (Del. Super. Ct. Feb. 15, 2013) ("arising out of or relating to" language covered "all aspects of this case, including those tort actions that arise out of the parties' contractual agreements"). Unsurprisingly, none of Plaintiff's proffered authority addresses this situation where auditors or accountants performed services pursuant to an engagement agreement containing a choice-of-law provision, and were then sued by a non-party.

[3] Count 1 is "Negligent Misrepresentation ***Based on Violations of GAAS***." Plaintiff alleges, "As an auditor, UHY was obligated to plan and perform its audits in accordance with Generally Accepted Auditing Standards ("GAAS"), and to adhere to the ethical requirements of the accounting profession, including the [AICPA] Code of Professional Conduct, Rule 202, requiring compliance with GAAS." Compl. ¶ 35.

services pursuant to the Engagement Letters, which dictate the scope of, the standards for, and the law governing, UHY's provision of those services.

Using an artificial distinction between malpractice claims and negligent misrepresentation claims against auditors as its footstool, Plaintiff demands that the Court ignore the Restatement factors in Section 145 (general principle for torts) and, instead, consider only the factors in Section 148 (fraud and misrepresentation). (Opp. at 19-20.) But none of the cases relied upon by Plaintiff involves auditors.[4] Even outside of the auditor context, Delaware courts routinely consider the factors in Section 145 in connection with negligent misrepresentation claims. *See, e.g.*, *In re Uni-Marts, LLC*, 404 B.R. 767, 779 (Bankr. D. Del. 2009) (analyzing only Section 145 factors in connection with negligent misrepresentation claim); *Lloyd's London v. Nat'l Installment Ins. Servs., Inc.*, 2007 WL 4554453, at *8 (Del. Ch. Dec. 21, 2007) (same). Put differently, Delaware courts "do not simply add up the number of contacts in applying these [Restatement] factors, but instead weigh them in the unique circumstances of the case at hand." *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 819 (Del. Ch. 2009) ("*AIG*").

Plaintiff wrongly asserts that "New York's interest in protecting professional firms gives way to California's paramount interest in protecting its citizens." (Opp. at 25.) UHY does not argue that New York has an interest solely in protecting its auditors, but rather that it has a strong interest in regulating the conduct of auditors working within its borders. (Mot. at 15-16.) New York has a "compelling interest in applying its law in a predictable, uniform manner to activities

[4] Opp. at 19-20; *In re Orion Ref. Corp.*, 341 B.R. 476, 484 (Bankr. D. Del. 2006) ("parties agreed that Louisiana law would govern" repair and restoration work at oil refinery); *Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharms. LP*, 2015 WL 4111826, at *8 (Del. Super. Ct. July 8, 2015) (N.Y. law applied to claims involving marketing of medication); *Stanley Black & Decker, Inc. v. Gulian*, 70 F.Supp.3d 719, 727 (D. Del. 2014) (defendants were corporation's officers and directors); *In re Decade, S.A.C., LLC*, 635 B.R. 735, 760 (Bankr. D. Del. 2021) (addressing sports agents' fraud claims; *in pari delicto* barred trustee's claims).

by New York licensed accountants that occurred in New York." *Overland Leasing Grp., LLC v. First Fin. Corp. Servs. Inc.*, 436 F. App'x 119, 123 (3d Cir. 2011); *HSA Residential Mortg. Servs. of Texas v. Casuccio*, 350 F. Supp. 2d 352, 365 (E.D.N.Y. 2003) ("New York has a strong interest in defining the scope of liability for accountants who work in its state."); *AIG*, 965 A.2d at 821 ("professionals practicing in a certain state should be able to practice in reliance upon the law of that state"); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1536 (10th Cir. 1996) ("Colorado's interest in regulating its attorneys' negligent conduct outweighs Michigan's interest in protecting a Florida citizen doing business within Michigan's borders.").

In contrast, Plaintiff trumpets California's interest in protecting California consumers from deceptive business practices, which is obviously not implicated here. (Opp. at 24 (relying exclusively on inapt consumer protection cases).) Plaintiff fails to identify a sufficient competing interest that would supersede that of New York's. In addition, Plaintiff does not dispute that New York law is more settled, certain, and predictable than California law. (Mot. at 19-23.)

Finally, Plaintiff attempts to distinguish *AIG*, *Overland*, and *Kaiser* on the basis that "the SPAC had no presence in the state where UHY allegedly performed its audit." Opp. at 23. Not so. While Near Holdco and the SPAC were headquartered in California (yet incorporated and filed for bankruptcy in Delaware), they chose to hire a New York accounting team from a New York accounting firm. This made sense given the SPAC's status as being "registered with the [SEC] as a publicly traded company on the NASDAQ," which is located in New York. (Compl. ¶¶ 6, 12.) The Complaint alleges that, in reliance on UHY's audit reports, Plaintiff entered into a merger transaction to acquire UHY's client. The consideration for that merger was the NASDAQ stock. Compl. ¶ 62 ("Had UHY conducted proper audits and accurately represented Near Holdco's financial condition, the SPAC never would have acquired Near Holdco or paid 41 million shares

of common stock as consideration."); *see also id.* ¶¶ 21, 55, 61.

Plaintiff's assertion that California law should apply because UHY's audit opinion induced two California companies to merge ignores that this merger needed to comply with ***New York*** stock exchange platform requirements, and that the merger consideration involved the purchase of shares traded on that New York platform. *Id.* ¶¶ 6, 12, 21, 55, 61, 62. There is no other reason why Near Holdco hired UHY's New York audit team, rather than California auditors. *Id.* ¶ 7; Norris Decl. Ex. A-C. Both Near Holdco and the SPAC chose to conduct at least part of their business—the business that involved hiring UHY to perform audit services—in New York. *Id.* They should not now be permitted to disavow their prior acts.

### ii. The *In Pari Delicto* Doctrine Bars Plaintiff's Claim

Plaintiff's assertion that the *Wagoner* Rule is a rule of federal standing that is inapplicable in the Third Circuit is merely a red herring. While *in pari delicto* is an affirmative defense under New York law, it "may be resolved on the pleadings in a state court action in an appropriate case." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 946 n.3 (N.Y. 2010). New York courts have historically treated *in pari delicto* and *Wagoner* interchangeably. (*See* Mot. at 19-20.) Regardless of how the Court treats this issue—standing or an affirmative defense—Plaintiff's claims must be dismissed.[5]

#### a. Plaintiff Cannot Escape Imputation of Bad Acts Committed by Its Own Officers

Fatal to Plaintiff's claims is that, as a matter of law, Plaintiff (the litigation trustee) stands in the shoes of the SPAC (Near, Inc.) as of the petition date, at which point the bad actors had already been appointed as officers of the SPAC. *In re Dep't 13, Inc.*, 2024 WL 958080, at *4

[5] Plaintiff inevitably attacks application of *Wagoner* because it knows it cannot meet its jurisdictional burden thereunder. As for the Third Circuit's decision in *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, it is no help to Plaintiff. 267 F.3d 340 (3d Cir. 2001). *Lafferty* applied Pennsylvania law, which all parties agree has no application here.

(Bankr. D. Del. 2024); (Opp. 7). Plaintiff's own authority compels this result. *Lafferty*, 267 F.3d at 256 ("[T]he explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy."). Plaintiff cannot go back in time to the pre-merger SPAC and pretend to assert claims on behalf of KludeIn. As stated in *Nisselson* (and every other relevant decision), there is no "innocent successor" exception for bankruptcy trustees. (Mot. 11-12.)

Tellingly, Plaintiff does not dispute that the merger of Near Holdco into the SPAC's subsidiaries resulted in imputation of the misconduct to those subsidiaries. Plaintiff's assertion that the misconduct cannot be imputed to the "innocent" SPAC parent ignores the nature of a SPAC. The SPAC had no business and no purpose other than to acquire the target's (Near Holdco) business. The "subsidiary" had no business either, and was formed solely to engage in the transaction (to obtain favorable tax treatment). Near Holdco's shareholders obtained the SPAC's stock. Near Holdco's officers became the SPAC's officers and continued the fraudulent revenue recognition scheme. (Compl. ¶¶ 12, 16, 21, 50-57, 61.) While the "parent" and "subsidiary" may be different legal entities, they were by no stretch of the imagination separate or distinct businesses. Plaintiff's suggestion that an acquiring company can somehow avoid imputation of the fraud perpetrated by the target company's officers by merely creating a subsidiary to acquire it instead is unsupported by law, common sense, or public policy. The court's rationale in *Nisselson v. Lernout* holds true whether or not the acquiring entity created a subsidiary for the acquisition: Near Holdco "was the main player in the alleged fraud and its parlous behavior must be imputed lock, stock, and barrel" to the SPAC that acquired it. It follows inexorably that the SPAC, "in contemplation of law, bears at least as much responsibility for the asserted wrongdoing" as UHY. 469 F.3d 143 (1st Cir. 2008). Plaintiff's assertion that the SPAC is entirely separate from its subsidiary that merged with Near Holdco is also at odds with Plaintiff's allegations that, in reliance

on UHY's audit report, the SPAC created and then caused the subsidiary to engage in the merger transaction. Compl. ¶ 20.

Plaintiff concedes that the bad actors—the officers of Near Holdco whom no one disputes spearheaded the round-tripping scheme—were appointed "officers of the SPAC" post-acquisition. (Opp. at 7, citing Compl. ¶¶ 16, 57.) At that point, the foxes were guarding the hen house. Plaintiff does not dispute—and averred elsewhere—that the round-tripping scheme continued post-acquisition. (Norris Decl. Ex. C.) Plaintiff also alleged that at least six "sham payments" continued post-acquisition (and pre-petition), from June 2023 through September 2023. RJN Ex. 2, ¶ 42. Whether the bad actors were fired after the fraud was discovered does not immunize Plaintiff from imputation—the SPAC became tainted by the fraud and therefore is barred from pursuing claims against UHY. "When corporate officers carry out the everyday activities… such as issuing financial statements,…handling customer accounts, moving assets between corporate entities…their conduct falls within the scope of their corporate authority…. And where conduct falls within the scope of the agents' authority, everything they know or do is imputed to their principals." *Kirschner*, 938 N.E.2d at 951 (cleaned up). Plaintiff offers no support for the theory that later removal of bad actors reverses imputation. Thus, Plaintiff's attempt to distinguish *Nisselson* on the basis that the parent company engaged in fraudulent conduct fails. (Opp. at 18.)

Plaintiff's proffered case law is inapposite. In *Pilot Corp. v. Abel*, the plaintiff was "enforcing a different right under a different agreement" from the one connected to the wrongdoing. 2023 WL 8643195 (Del. Ch. Dec. 13, 2023). Here, the fraud was directed at the very information being provided to UHY for the audit. In *In re Salander*, the court rejected an *in pari delicto* defense by pointing to the separateness of a husband and wife, not a SPAC and its target. 503 B.R. 559, 570 n.14 (S.D.N.Y. 2013). Plaintiff's cited language is *dicta* because the

court in *Salander* found that Wells Fargo twice waived (and was otherwise estopped from asserting) an *in pari delicto* argument. *Id.* at 568-69.

Moreover, nearly all of Plaintiffs' cited cases address imputation as a sword in connection with affirmative veil piercing claims (Opp. at 15-16), as opposed to a shield against bad actors seeking to benefit from their own misconduct (as UHY seeks to do).[6] Denying relief to wrongdoers, deterring illegality, and avoiding entangling courts in disputes between transgressors are all "important public policy purposes" served by the *in pari delicto* doctrine. *New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*, 145 A.D.3d 16, 23 (N.Y. App. Div. 2016) (quoting *Kirschner*, 938 N.E.2d at 930). Plaintiff's rationale elevates form over substance in an attempt to manufacture another "innocent successor" defense that all courts reject.

**b. The Adverse Interest Exception Does Not Apply**

Plaintiff makes no attempt to challenge—and therefore concedes—the unavoidable result under New York law that the adverse interest exception does not apply. (Mot. at 22.) Even if California law applied to Plaintiff's claims—it does not—Plaintiff's cases do not support its position.[7] While Plaintiff asserts that the officers' "looting and self-dealing continued when they

[6] Other cases cited by Plaintiff support UHY's position or are distinguishable. *McHale v. Silicon Valley L. Grp.*, 2011 WL 6990187, at *5 (N.D. Cal. Dec. 14, 2011) ("[K]nowledge of a corporate officer acting within the scope of his duties is generally imputed to a corporation."); *Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*, 658 B.R. 783, 799 (D. Del. 2024) (affirming dismissal where imputation was supported ***solely*** by allegation of the ***existence*** of one overlapping director); *Sandoval v. Uphold HQ Inc.*, 2025 WL 1268291, at *7-8 (S.D.N.Y. May 1, 2025) (same).

[7] *Microtechnologies, LLC v. Autonomy, Inc.*, 2018 WL 4538782, at *6 (N.D. Cal. Sept. 21, 2018) (noting lack of authority "for the proposition that efforts to inflate a corporation's value leading up to an acquisition can be considered adverse to the interests of that corporation"); *McHale*, 2011 WL 6990187, at *5 (plaintiff did not dispute that misappropriation of company funds was adverse to company's interest); *In re California TD Invs. LLC*, 489 B.R. 124, 133 (Bankr. C.D. Cal. 2013) (making clear that where "violations by the principals benefited the corporations they controlled, at the expense of outsiders," the adverse interest exception would not apply) (discussing *Cobalt Multifamily Investors I, LLC v. Arden*, 857 F. Supp. 2d 349 (S.D.N.Y. 2011)).

became officers at Near Holdco" (at 26), the cited paragraphs of the Complaint discuss only the round-tripping scheme that inflated company revenue, which is the gravamen of the fraud and benefitted both Near Holdco and then the SPAC. (Compl. ¶¶ 16-18, 43-44, 50-53.)

**B. Plaintiff's Claim for Fraudulent Business Practices Fails (Count 2)**

**i. Plaintiff's Conclusory Allegations Fail to State a Claim**

In its Opposition, Plaintiff does not—and cannot—dispute that the Complaint alleges no fraudulent business practices. As for unlawful, Plaintiff asserts that alleging violations of professional standards, including GAAS, are sufficient to state a claim. But Plaintiff's proffered case law is distinguishable. It cites only one case involving a UCL claim against accountants. There, the UCL claim was brought by the State of California on behalf of the Department of Insurance and was premised on the allegation that the accountants had "knowledge" that the audited title company was engaging is possible "illegal acts." *State of California ex rel. Harris v. PricewaterhouseCoopers*, 23 Cal. Rptr. 3d 529, 579–80 (Ct. App.), *rev'd in part on other grounds*, 111 P.3d 921 (Cal. 2005) (emphasis added). Here, Plaintiff cannot identify any unlawful behavior that would allow a private third party to bring a UCL claim against an accountant based on a negligence theory as opposed to a fraudulent misrepresentation or aiding and abetting theory, and so Plaintiff cannot state a claim under the UCL's unlawful prong.[8]

As for unfair, Plaintiff concedes that it cannot satisfy either the tethering test or the immoral test. (*See* Mot. at 24-25.) The Opposition argues only that the UCL claim satisfies the balancing test. But Plaintiff rotely repeats the standard and points to its conclusory allegations, without

[8] Plaintiff's other case is inapposite. *People ex rel. Herrera v. Stender*, 152 Cal. Rptr. 3d 16, 32, 37 (Cal. Ct. App. 2012) (UCL claim based on "aiding and abetting unauthorized practice of law").

identifying any unfair conduct. (*See* Opp. at 28-29.)[9] Plaintiff makes no attempt to allege ***how*** the gravity of UHY's alleged conduct outweighs any justification or motive for the conduct, which it cannot do.[10] *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (affirming dismissal where plaintiffs "assert[ed] in a conclusory fashion that [the defendant's] conduct 'outweighs any justification, motive or reason therefor,' but they do not allege how that is so").

Plaintiff's sole justification for relying on its conclusory allegations is that "the balancing test is 'not…a particularly difficult test to satisfy.'" Opp. at 28 (quoting *Pemberton*, 331 F.Supp.3d at 1051). *Pemberton* does not hold that plaintiffs bringing UCL claims are exempt from federal pleading standards. Plaintiff makes no attempt to distinguish UHY's directly analogous case that involves accountants—it cannot. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (allegations related to accountants' audit activities, even if audit was "possibly not proper," did not rise to level required to sustain claim under unfair prong). Simply waving at the UCL's "sweeping scope" (Opp. at 27) is not sufficient to state a claim. *See Doe*, 982 F.3d at 1214-15.

**ii. Plaintiff Fails to Establish Entitlement to Equitable Relief.**

Equally fatal to Plaintiff's UCL claim is the complete absence of an allegation that Plaintiff lacks an adequate remedy at law. Although the Ninth Circuit does not require parties to plead "magic words to survive dismissal," at the very least a party must make "a simple allegation that legal remedies are inadequate." *Turner v. Porsche Cars N. Am., Inc.*, 2023 WL 8788754, at *6

[9] *See also, e.g.*, Compl. ¶ 76 ("UHY's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to the SPAC, its creditors, and the public at-large.").

[10] Plaintiff's cited case is distinguishable, as it involved claims by consumers against a mortgage loan servicer. *See Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047–48 (S.D. Cal. 2018) (plaintiffs alleged that defendant "failed to report millions of dollars in mortgage interest" and "caused taxpayers to 'unknowingly file erroneous tax returns' and 'permanently los[e] valuable tax deductions'"). The plaintiffs in *Pemberton* also had stated a claim under the unfair prong's public policy test, unlike Plaintiff here.

(C.D. Cal. Dec. 19, 2023); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff failed to do so. It is "axiomatic" that Plaintiff cannot amend the Complaint via opposition brief. *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *8 (Bankr. D. Del. Sept. 6, 2019).[11]

In addition, Plaintiff provides no support for its contention that it is entitled to restitutionary damages. While Plaintiff alleges UHY's work was deficient, Plaintiff does not allege that UHY did not actually do the work at all and thus would not be entitled to compensation. *Brown v. Grimes*, 192 Cal. App. 4th 265, 280–82 (Cal. Ct. App. 2011) ("failure of performance generally gives rise to a claim for restitution…only when there has been a...total failure of consideration or repudiation"). If redress for "ordinary legal damages could be characterized by plaintiff as 'restitution,' then any damage claim could be converted into an argument for restitution." *Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1037 (C.D. Cal. 2021) (internal quotations omitted) (return of premium payments was unavailable under UCL because they were consideration for insurance policy). The only authority Plaintiff cites in support of its entitlement to recovery for work that UHY performed for Near Holdco is inapposite—all of Plaintiff's cases involve consumer class actions. *Shersher v. Superior Ct.*, 154 Cal. App. 4th 1491, 1497 (Cal. Ct. App. 2007) (plaintiffs permitted to maintain false advertising and UCL claims against Microsoft despite having purchased Microsoft products indirectly from a retailer); *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 129-30 (2000) (involving allegations that certain tenant fees were illegal). By contrast, this is a private dispute between sophisticated commercial entities (and services were performed pursuant to an engagement agreement). Plaintiff's UCL claim should be dismissed.

[11] Plaintiff cites only one case where the complaint survived despite failure to allege non-monetary harm. There, however, plaintiffs were able to articulate some form of a need for injunctive relief. *French v. Banana Republic LLC*, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024). Not so here.

### C. Other Documents Annexed to the Motion Are Subject to Judicial Notice

The Court can properly consider the documents UHY submitted with its RJN:

First-Day Declaration (RJN Ex. 1): The Court can take judicial notice of the first-day declaration submitted by the SPAC's CFO. Such declarations are often relied upon as a factual admission of the Debtors throughout the Chapter 11 case, including in support of first-day financing, and in the Chapter 11 plan and disclosure statement. While the facts in the declaration can sometimes be disputed, such disputes are raised only by creditors and other non-debtor parties, ***not the debtor itself or its successor (or trustee)***.[12] It is a "well-settled rule that a party is bound by what it states in its pleadings." *In re Bittrex, Inc.*, 2024 WL 2347311, at *13-14 (Bankr. D. Del. May 22, 2024) (claimant bound by his voluntary elections and judicial admissions).

MobileFuse Complaint (RJN Ex. 2): Plaintiff does not object to the Court's taking judicial notice of its Complaint against MobileFuse. (Opp. at 9 n.5.) In it, Plaintiff refers to "Near Intelligence, Inc., *et al.*" as "collectively, the 'Debtors' or 'Near.'" Here, Plaintiff tries to artificially separate Near Intelligence, Inc., from Near Holdco. *Compare* RJN Ex. 2, at 1 *with* Compl. ¶ 1. Plaintiff also alleges that the round-tripping scheme continued post-acquisition after the fraudsters were appointed officers of the SPAC, a fact it seeks to evade here. *Id.* ¶ 42.

SPAC's 8-K (RJN Ex. 3): Plaintiff concedes that the Court can take judicial notice of the SEC filings (Opp. at 9-10)—specifically, the fact that the SPAC made these representations (whether true or not), which it is now contradicting in the Complaint.

## III. CONCLUSION

For the foregoing reasons, and for the reasons stated in its moving brief, UHY respectfully requests that the Court dismiss Plaintiff's state law claims (Counts 1 and 2) with prejudice.

---

[12] Plaintiff's cited case is distinguishable, as the first-day declaration did not contradict the complaint. *In re 225 Bowery LLC*, 2025 WL 2445879, at *5 (Bankr. D. Del. Aug. 25, 2025).

Dated: March 20, 2026

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Richard M. Beck*
Richard M. Beck (DE Bar No. 3370)
Sally E. Veghte (DE Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 552-5501
Email: rbeck@klehr.com
sveghte@klehr.com

**VEDDER PRICE LLP**
Michael J. Quinn (admitted *pro hac vice*)
1925 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (424) 204-7734
E-mail: mquinn@vedder.com

**VEDDER PRICE LLP**
William W. Thorsness (admitted *pro hac vice*)
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7595
E-mail: wthorsness@vedder.com

*Attorneys for Defendant UHY LLP*